Argued September 5, modified December 12, 1975

SMEJKAL, *Appellant, v.* RICE ET UX, *Respondents.*

543 P2d 271

*Gary D. Rossi,* Coos Bay, argued the cause for appellant. With him on the briefs was McInturff, Thom, Collver & Rossi, Coos Bay.

*Mervin W. Brink,* Hillsboro, argued the cause for respondents. With him on the brief was Brink and Moore, Hillsboro.

HOLMAN, J.

Plaintiff Smejkal and defendants Rice are the owners of contiguous tracts of timber land. This is a suit in equity to establish a boundary line between the two parcels pursuant to ORS 105.705 *et seq.* Both sides appeal from the decree of the trial court fixing the location of the line.

This is the second case between the parties. The first case was an action by the Rices (present defendants) against Smejkal (present plaintiff) for trespass seeking treble damages for the cutting and removal of timber under ORS 105.810. The jury in that case returned a verdict, accompanied by special findings, in favor of Smejkal. Judgment was entered on the verdict.

One of the issues in the trespass case was the true location of the boundary line between the parties. In order to illustrate the discrepancies between the asserted lines, a schematic diagram is reproduced as follows:

The boundary dispute in the first case (trespass) revolved around the correct location of section lines originally laid out in a government survey. Smejkal claimed that his survey correctly located a quarter corner for which there was no existing monument on

the section line between sections 32 and 33, represented on the diagram as the southern terminus of line A. The Rices' survey utilized a different location for the quarter corner. The proper location of line C was also in dispute. Smejkal claimed in his complaint that the Rices had acquiesced in, or agreed to, this part of the boundary as established by a survey conducted under Smejkal's direction. The Rices denied such an agreement and utilized a different line. There was no dispute, however, that line B (wherever it was) was simply a straight line connecting the southern terminus of line C (known as the interior sixteenth corner) with a point midway on the line connecting the northwest corner of the section (which was undisputed) with the disputed quarter corner on the boundary between sections 32 and 33.

The jury in special findings (in the first case) determined two matters having reference to the location of the boundary line: (1) that the quarter corner point located by Smejkal was correct, and (2) that the line referred to as line C in the exhibits was an agreed boundary line between the properties. The special findings were, in part:

"1. Were the results obtained by Defendant Smejkal, in locating and establishing the quarter corner between sections 32 and 33 correct?

Yes

"2. Were the results obtained by the Plaintiffs Rice in locating and re-establishing the quarter corner between sections 32 and 33, correct?

No

"3. Did Mr. Rice and Mr. Smejkal by agreement establish the boundary between their properties referred to as line 'c' in the exhibits?

~~No~~ Yes /s/ BWW"

Following judgment in the trespass action Smejkal filed the instant suit to establish the boundary. In his reply to the Rices' answer asserting a different line, Smejkal alleged the Rices were estopped by the prior judgment and verdict to deny that the correct boundary was other than as alleged in Smejkal's complaint. The trial court ruled that the Rices were estopped as to the location of line A by virtue of the jury special finding that Smejkal had correctly located the disputed quarter corner. As to lines B and C, however, the trial court was of the opinion that the jury had actually determined these to be "cutting" lines rather than true boundary lines. It therefore ruled that the Rices were not estopped as to the location of lines B and C. Smejkal appeals from the court's failure to collaterally estop the Rices as to the location of lines B and C. The Rices cross-appeal from the application of the estoppel to them as to line A.

The doctrine of collateral estoppel operates to preclude a party, under certain circumstances, from relitigating an issue or determinative fact that was actually decided and necessary to the decision in a prior action. *Jones v. Flannigan,* 270 Or 121, 124, 526 P2d 543 (1974); *Gaul v. Tourtellotte,* 260 Or 14, 17, 488 P2d 416 (1971); *Burnett v. Western Pacific Ins. Co.,* 255 Or 547, 556, 469 P2d 602 (1970). The party asserting estoppel has the burden of proving that the fact in issue in the second suit was also in issue in the first action, and that it was actually decided and essential to the decision in the prior action. *Holmgren v. Westport Towboat Co.,* 260 Or 445, 451, 490 P2d 739 (1971); *Jarvis et ux v. Indemnity Ins. Co.,* 227 Or 508, 512, 363 P2d 740 (1961). The question here is whether Smejkal has carried that burden of proof. Since ORS 105.705 provides that "[t]he mode of proceeding in a boundary suit is analogous to that of other suits in equity," this

court sitting in equity is free to make an independent determination of the question. ORS 19.125(2).

We will first determine whether the trial judge was correct in deciding that the Rices were estopped to dispute the location of line A. Smejkal introduced the pleadings, special findings, verdict, judgment and exhibits from the first case. He did not introduce a transcript of the evidence and instructions to the jury. The pleadings in the first case provide no assistance in establishing the boundary line because the Rices' property is described by subdivisions of the section without indicating where the boundaries of those subdivisions lie. Before we can determine if line A was established by the prior case, we must consult the special findings of the jury and the exhibits.

■ The location of the northwest corner of section 33 is undisputed. Neither is there any dispute but that line A is the southerly half of a straight line between the northwest corner of the section and the quarter corner common to sections 32 and 33. Therefore, the location and length of line A are determined by the location of the quarter corner. Exhibit 2 (a survey which was an exhibit in the first case) effectively demonstrates by course ( S 9° 55′ 11″ W) and distance (2631.12 feet) the location of the quarter corner in relation to the northwest corner of the section as claimed by Smejkal in that case and as found by the jury. Therefore, there is sufficient information to permit the location and length of line A as necessarily found in the first case. This length and location are not quite identical with the call and distance for line A which Smejkal asserts in his complaint in the present case. · Smejkal, as well as the Rices, is bound by the adjudication in the first case. There was no established monument at the quarter corner which governed the jury in the first case, and the jury found

that as to these two litigants, the quarter corner was where Smejkal described it to be. The exhibit from the first case demonstrates that Smejkal described his quarter corner to be S 9° 55' 11" W 2631.12 feet from the northwest corner of section 33. The southerly one-half of that line has to be line A as to these litigants and both parties are estopped to claim otherwise.

The next issue to be considered is whether the trial judge was correct in refusing to collaterally estop the Rices from contending that line C is other than as claimed by Smejkal. At the outset it is apparent that there is no basis in the record for the trial court's conclusion that the jury adjudicated line C to be merely a "cutting" line. As demonstrated by the third special finding of the jury, it was found that the Rices and Smejkal "establish[ed] *the boundary between the properties* referred to as line 'c' in the exhibits." (Emphasis ours.) The language is clear, and there is nothing in the record in either case to suggest that the jury meant something other than what it said.

Neither the pleadings, judgment, verdict, special findings, nor the exhibits in the first case demonstrate the *legal description* of line C as found by the jury in the first case and we have no transcript. Smejkal undertook to prove by oral testimony that the location of line C as found by the jury in the first case was identical with the description of that part of the boundary for which he contends in the present case. After reading into evidence the legal description of the lines contained in his present complaint, Smejkal testified:

"Q (By Mr. Rossi) Mr. Smejkal, does the real property enclosed by the line you testified today as being your correct boundary line, was that property the same property that Mr. Rice

claimed in his previous lawsuit that you trespassed upon?

"A   Yes."

And again on redirect:

"Q   The lines you have described in the complaint for this case, are they identical with the lines you claimed in the previous case as being the boundary line between the properties?

"A   Absolutely the same."

■ Smejkal's burden is to prove that the *evidence* in the prior case was such as to compel the conclusion that the jury determined line C with reference to a particular description and that that description is identical with his claim in the present case. Admittedly, the above-quoted testimony is somewhat equivocal as to whether Smejkal actually testified in the trespass case that line C possessed a definite location, although this is clearly the purport of his second answer. Any doubt that Smejkal did so testify, however, is removed by testimony elicited from Smejkal on cross-examination. Reading from the deed by which Smejkal acquired the property west of line C, defendants' attorney inquired:

"Q   And it was this description I'm holding in my hand in Exhibit Six that you used when you went on this call down to this interior sixteenth corner 1320 feet?

"A   Correct.

"Q   Now, doesn't this say in this description (reading) then 'South 4° 51 minutes West 1320 feet to the Southwest corner of said Legal subdivision'?

"A   Right. The question was is that a monument."

Referring to the same description in the same deed, defendants' attorney later asked:

"Q   The previous trial of this case, didn't you

say that you had gone a distance of 1320 feet from the North sixteenth corner on the section line on the call that was given in the Best deed and set a wooden post claimed that to be the line?

"A   Mr. Rice and I?

"Q   Isn't that what you said?

"A   That is what I did.

"Q   Isn't that what you said?

"A   Yes, that's what I did in fact. I attempted to do.

"MR. BRINK: That's all."

It would seem that the only reasonable interpretation of this exchange is that Smejkal did in fact testify in the earlier case that the line he claimed was located, starting from the North sixteenth corner (which is undisputed), "South 4° 51 minutes West 1320 feet to the Southwest corner of said Legal subdivision." The pleadings in the first case show that the line he claimed was an *agreed* line and the jury in the first case by its special verdict found the agreed line was line C. This description is the same one he alleges in the complaint in the present suit. With this description, it is possible to locate the southern terminus of line C (the interior sixteenth corner). Since there is no dispute but that line B is simply a straight line connecting the northern terminus of line A with the southern terminus of line C, proof of the location of line C when coupled with the proof of the location of line A is sufficient to establish the location of the entire boundary.

We are dependent upon the above-recited oral evidence by Smejkal to complete the chain connecting line C as found by the jury in the special finding with the legal description of the line claimed by him in the present case. This raises the problem of wheth-

er Smejkal's oral evidence can be used to prove that a particular issue was decided in a prior case. Cases are legion which say that such an issue has to be proved by the "records" of the prior case. However, these statements are made in the context of whether a court may take judicial notice of the records of another case as a basis for applying estoppel in lieu of requiring the proponent to produce the record. See cases under an annotation in 96 ALR 944 entitled, "Necessity of offering in evidence the record in the prior case in support of plea or claim that former judgment is bar or res judicata."

The rule is stated in James, Civil Procedure 579, § 11.19 (1965 ed), as follows:

"Burden and sources of proof. The party who claims the benefit of collateral estoppel has the burden of introducing evidence to show that the matter or point now at issue was also put in issue in the former action. The pleadings in that action are clearly available for that purpose but the proof is not limited to them. The proponent may show what was put in issue by any part of the record in the former action, including a transcript of the proceedings if there was one. He can also show what was put in issue by the testimony of any observer (who has testimonial qualifications), including a juror or judge in the former action. Such testimony on the part of a member of the tribunal in the first proceeding is to be sharply distinguished from an attempt to elicit from him the grounds of his decision which, as we shall see, is not generally permitted. Testimony under the present head is confined to a description of objective phenomena at the former proceedings; e.g., what evidence was offered, what arguments were made, and the like, all in open court." (Footnotes omitted.)

Also, at page 580, § 11.20:

"In order to resolve such an ambiguity [in a

verdict] the proponent of the former judgment may put in evidence any parts of the former record and oral testimony of a qualified observer (extrinsic to the record) to show what issues were actually litigated and submitted to the tribunal in the former action. * * *." (Footnote omitted.)

The wisdom of permitting evidence extrinsic to the record (such as Smejkal's testimony concerning what he testified to in the prior case) to prove what issues were actually decided might be questioned when the entire record of the prior case is available and would disclose to almost a certainty what was there adjudicated. There is no showing in the present case that the reporter's transcript from the prior case was not available, but, on the other hand, there was no objection on this basis to any of the oral testimony of Smejkal concerning the legal description in issue as line C in the first case. As a result, in the absence of objection, we do not have to resolve the problem in this case.

■ On the basis of the evidence submitted there is no doubt in our minds that the description of line C as found by the jury in the first case is identical with that of the description as alleged in Smejkal's complaint in this case. It is, therefore, our conclusion that the Rices are collaterally estopped to contend that the boundary designated line C is other than as alleged in Smejkal's complaint.

The Rices contend that the court erred in applying collateral estopel as to line A because (1) ORS 105.705 *et seq.* are "special" statutes as opposed to "general" statutes; (2) the jury's determination of the location of the boundary in the first case was only an "evidentiary" fact and not a "fact in issue"; and (3) adjacent landowners not parties to the suit will be bound by the court's ruling of estoppel and the boundary location.

██ The first contention is without merit. The Rices perceive a "special" statute to be one which limits or preempts the application of a statute otherwise applicable to actions at law and suits in equity, *Colby v. Larson,* 208 Or 121, 297 P2d 1073, 299 P2d 1076 (1956), and claim that the law of trespass is "general" whereas a suit to establish a boundary is "special." Even assuming that this is a correct characterization of the statutes, we do not apprehend how the labels attached have any bearing on the applicability of the doctrine of collateral estoppel. The essence of the doctrine is that a fact once adjudicated is binding upon certain litigants, unless countervailing considerations dictate otherwise. In a proper case a vast difference in the purpose and scope of the respective proceedings may constitute such a countervailing consideration. In the instant case we can perceive no such difference, or any other factors, which would preclude the application of collateral estoppel.

■ Neither is the second contention valid. The first case was one of trespass. It could not be determined whether Smejkal trespassed upon the Rices' property without ascertaining the correct boundary between the properties. The boundary was thus a "fact in issue" and not an "evidentiary fact" and was essential to the judgment.

■ The third contention is wholly untenable. The decree does not purport to bind anyone other than the parties to the suit; and it could not constitutionally do so without providing notice and opportunity to be heard to all landowners affected.

The case is remanded to the trial court with instructions to adjudicate the property line to be as follows:

Beginning at an iron pipe at the most westerly one-sixteenth corner on the North boundary of Section

33 in T3N, R5W, W.M., thence S 4° 51′ W 1320 feet, thence in a westerly direction to a point S 9° 55′ 11″ W 1315.56 feet from the northwest corner of said Section 33, thence S 9° 55′ 11″ W 1315.56 feet to the end of the boundary.