STATE FARM FIRE AND CASUALTY
COMPANY et al, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC.,
*Appellant.*
Case No. 92610

OLSON et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 92501

PARKS, *Respondent,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 92589

MEEK et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 73-4238

POTTER et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 73-4239

FIDLER et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 73-4496

SMITH et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 94488

ESCO CORPORATION, *Respondent,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 95496

RUFF et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 97005

GILMORE et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 93162

SMITH et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 93314

BECKER et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 93371

MORITZ et ux, *Respondents,*
*v.*
CENTURY HOME COMPONENTS, INC., *Appellant.*
Case No. 73-4582

550 P2d 1185

*Darst B. Atherly* of Thwing, Atherly & Butler, Eugene, argued the cause for appellant. With him on the briefs were John C. Sihler and Samuel G. Wilson, Eugene.

*Paul D. Clayton,* Eugene, argued the cause for respondents State Farm Fire and Casualty Company, David Lindahl and Ann Lindahl, and Aero-Mayflower Transit Co., Inc.; Richard K. Smith and Prudence H. Smith; Kenneth C. Becker and Marie L. Becker; and Lucile E. Parks. With him on the brief were Ralph F. Cobb and Luvaas, Cobb, Richards & Frazer, Eugene.

*Arthur C. Johnson,* Eugene, argued the cause for respondents Walter L. Olson and Karen Olson; Earl R. Gilmore, Jr., and Eva M. Gilmore; John Meek and

Linda Meek; Gene P. Moritz and Theresa Moritz; James T. Potter and Mary C. Potter; Elmer R. Smith and Rollina R. Smith; Charles W. Fidler and Ann Fidler; and Wallace Ruff and Ruth Ruff. With him on the brief were John B. Arnold, Leslie Swanson, and Johnson, Johnson & Harrang, Eugene.

*Darrell L. Johnson* of Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland, filed a brief as amicus curiae.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue, Howell, and Bryson, Justices.

HOLMAN, J.

## HOLMAN, J.

Defendant appeals from judgments entered in 13 actions for damages resulting from a fire. These actions were among 48 cases consolidated for a single hearing in the court below on the issue of collateral estoppel. The ruling of the trial court that defendant was collaterally estopped from contesting liability in each of the 48 actions forms the basis for defendant's appeal.

The fire giving rise to this litigation started early one Sunday morning in the summer of 1968. Defendant constructed prefabricated housing in a large shed. Plaintiffs' property was stored in a warehouse which was located approximately 60 feet from defendant's shed and which was connected thereto by a wooden loading dock. On the side of defendant's shed was a wooden box, called a skip box, into which sawdust from a neighboring saw was customarily deposited. On the Saturday evening preceding the fire, defendant's janitor had dumped a mix of linseed oil and dry sawdust into the box. No employees were present at the time the fire started. Whatever its cause and point of origin, and these are in dispute, the fire spread via the loading dock and caused substantial damage to defendant's shed, the warehouse and its contents.

Shortly thereafter various actions, eventually totalling over 50, were filed against defendant to recover for losses from the fire. Three of these actions proceeded separately through trial to final judgment. In each case the plaintiffs alleged essentially that defendant was negligent with respect to both the start and spread of the fire. The first case to come to trial resulted in a jury verdict for defendant. On appeal this court reversed the judgment for error in failing to compel defendant to produce a statement needed by the plaintiff for purposes of impeaching a defense witness, and remanded for a new trial. *Pacific N. W. Bell v. Century Home,* 261 Or 333, 491 P2d 1023, 494 P2d 884

(1972). During the pendency of the foregoing appeal the second case was tried and produced another jury verdict for defendant. *Sylwester v. Century Home Components, Inc.,* No. 92582 (Circuit Court of Oregon for Lane County). No appeal was taken from that judgment and it became final. Shortly thereafter the third case was tried and a jury verdict was returned for the plaintiff. This judgment was affirmed on appeal. *Hesse v. Century Home,* 267 Or 53, 514 P2d 871 (1973). The *Pacific N. W. Bell* case was subsequently retried, this time to the court sitting without a jury, and the court found for the plaintiff. We affirmed on appeal, *Pacific N.W. Bell v. Century Home,* 267 Or 46, 514 P2d 874 (1973).

Following entry of final judgment in both *Hesse* and *Pacific N. W. Bell,* the present plaintiffs filed amended and supplemental complaints, conforming their allegations to those in the foregoing cases, and asserted that the judgments therein should operate to preclude defendant from again litigating the question of liability. Defendant alleged in defense that it would be unfair to bar relitigation in view of the similarity of issues between those cases and *Sylwester* and of the existence of the jury verdict and judgment in defendant's favor in *Sylwester.* In the consolidated hearing on the question of collateral estoppel the parties submitted the records and transcripts of all three cases. The trial court rendered its ruling in favor of plaintiffs, finding *inter alia:*

> "* * * That the allegations of the second amended and supplemental complaint raising the issue of collateral estoppel have been established by the greater weight of the evidence, and that the affirmative allegations of the answer thereto have not been established by the evidence. * * *."

To summarize the posture of these cases, the question of defendant's negligence has been tried four times and three final judgments have been rendered. Defendant has procured one favorable judgment (and two jury verdicts) and the claimants have received two

judgments. The present plaintiffs, who were not parties to any of the previous actions, seek to utilize the prior claimants' judgments to establish conclusively defendant's negligence and its responsibility for any loss caused by the fire.

■ Our point of departure is our decision in *Bahler v. Fletcher,* 257 Or 1, 474 P2d 329 (1970). In *Bahler* we discarded the requirement of mutuality as a prerequisite to collateral estoppel because "mutuality is not a relevant basis on which to determine the finality of litigation." 257 Or at 19. We set forth two essential conditions for the application of collateral estoppel by a non-party against one who was a party to a prior action. First, there must exist an identity of issue between the prior action and the action in which estoppel is asserted; and second, the party against whom estoppel is sought must have had a full and fair opportunity to contest the issue decided adversely to him. 257 Or at 20. We clearly recognized, however, that even when these two prerequisites are satisfied, "the unlimited use of collateral estoppel by a person who was neither a party nor in privity with a party to the original litigation may, in some instances, lead to unfair results." 257 Or at 10. We therefore counseled the courts to "scrutinize with care any situation where collateral estoppel is asserted by a person who was neither a party nor in privity with a party to the first case, to make certain no unfairness will result to the prior litigant if the estoppel is applied." 257 Or at 19.

Defendant does not challenge the trial court's conclusion that the issues in *Hesse* and *Pacific N. W. Bell* were identical with the issues in the present cases and that the question of defendant's negligence with respect to the cause and spreading of the fire was decided adversely to defendant in both actions. Nor does it deny, at least with respect to the second *Pacific N. W. Bell* trial, that it had a full and fair opportunity to litigate the issue of negligence. Defendant's only contention is that the trial court erroneously con-

cluded that no unfairness would result from collaterally estopping defendant in the present circumstances.

■■ The parties disagree initially on the proper scope of appellate review, and we will take this opportunity to delineate both the obligations of the parties with respect to proof of collateral estoppel and the standard of appellate review. Plaintiffs contend we are bound by the trial court's ruling if it is supported by substantial evidence. We have frequently stated that the party asserting estoppel has the burden of proving the elements giving rise to it, *e.g., Smejkal v. Rice,* 273 Or 687, 692, 543 P2d 271 (1975); *Holmgren v. Westport Towboat Co.,* 260 Or 445, 451, 490 P2d 739 (1971); *Jarvis v. Indemnity Ins. Co.,* 227 Or 508, 512, 363 P2d 740 (1961), but this statement requires elaboration. Since collateral estoppel rests upon the principle that an issue was actually decided and was necessary to the judgment in a prior action, the party asserting estoppel bears the responsibility of placing into evidence the prior judgment and sufficient portions of the record, including the pleadings, exhibits, and reporter's transcript of the testimony and proceedings, to enable the court to reach that conclusion with the requisite degree of certainty. *See Gaul v. Tourtellotte,* 260 Or 14, 17, 488 P2d 416 (1971); *Burnett v. Western Pac. Ins. Co.,* 255 Or 547, 556-57, 469 P2d 602 (1970); *State v. George,* 253 Or 458, 463-64, 455 P2d 609 (1969). If the materials submitted are inadequate to permit the court to ascertain an identity of issue, the matters decided or the basis for decision in the prior action, the party seeking estoppel cannot prevail. *Compare Jones v. Flannigan,* 270 Or 121, 127-28, 526 P2d 543 (1974) *with Jones v. Flannigan,* 273 Or 563, 565, 542 P2d 907 (1975). *See also State v. Hoare,* 20 Or App 439, 448-49, 532 P2d 240 (1975). The fact that the party asserting estoppel bears the burden of proof does not mean, however, that the trial court's ruling on the evidence submitted is entitled to any special deference on appeal. Whether the issues are identical and whether a particular matter was actually decided are

questions of law for the court. *Meyers v. Burwell,* 271 Or 84, 89, 530 P2d 833 (1975).[1] Consequently, the question on review is whether the evidence is sufficient as a *matter of law* to establish the elements of collateral estoppel.

■ Once the court has concluded that the evidence is sufficient to establish that an identical issue was actually decided in a previous action, "prima facie the first judgment should be conclusive." *Bahler v. Fletcher,* 257 Or at 20. The burden then shifts to the party against whom estoppel is sought to bring to the court's attention circumstances indicating the absence of a full and fair opportunity to contest the issue in the first action or other considerations which would make the application of preclusion unfair. Whether the proffered circumstances and considerations warrant a conclusion that the litigant lacked a "full and fair" opportunity to litigate the issue and that it would be otherwise "unfair" to preclude him from contesting the issue again are likewise questions of law. Collateral estoppel involves a policy judgment balancing the interests of an individual litigant against the interests of the administration of justice, and this court reserves the final word as to where the balance is struck in any given case. *Cf. Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). It is therefore our duty to determine independently whether the circumstances revealed by the evidence justify the conclusion that it would be inequitable to estop defendant in these cases.

■ The "multiple-claimant anomaly" was first hypothesized by Brainerd Currie as one instance where, absent mutuality, the unrestrained application of collateral estoppel might produce unfair results. Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan L Rev 281 (1957). Currie

---

[1] Our specific holding in *Meyers v. Burwell,* 271 Or 84, 530 P2d 833 (1975), that a traffic offense conviction can be utilized for collateral estoppel in a subsequent civil action, has been abrogated by ORS 41.905(1), *see Reinsch v. Quines,* 274 Or 97, 107, 546 P2d 135 (1976), but the other principles of law stated therein remain applicable.

posed the situation of a train wreck resulting in 50 separate claims being filed against the railroad for negligence. If the defendant railroad won the first 25 cases and subsequently lost the 26th, Currie characterized as an "absurdity" the notion that the remaining 24 claimants could ride in on the strength of the 26th plaintiff's judgment and estop the defendant on the issue of negligence. The reason was that the 26th judgment would clearly seem to be an aberration. Currie then reasoned that, if we should be unwilling to give preclusive effect to the 26th judgment, we should not afford such effect to an adverse judgment rendered in the *first* action brought because "we have no warrant for assuming that the aberrational judgment will not come as the first in the series." Currie, *supra* at 289. Currie thus concluded that, absent mutuality, collateral estoppel should not be applied where a defendant potentially faces more than two successive actions. Currie, *supra* at 308.

Those courts which have discarded the rule of mutuality and permit the offensive assertion of collateral estoppel have generally rejected Currie's solution to the multiple-claimant anomaly in situations where the *first* judgment is adverse to the defendant, and have precluded a defendant from relitigating multiple claims where it has been concluded that the defendant had in actuality the incentive and complete opportunity to contest the issue fully in the first action.[2] Currie's reservations were based on the apprehension that the first judgment might well be an aberration, but this view failed to recognize that the very notion of collateral estoppel demands and assumes a certain confidence in the integrity of the end result of our adjudicative process. There is no foundation in either

[2] *Zdanok v. Glidden Co.,* 327 F2d 944, 956 (2d Cir 1964); *United States v. United Airlines, Inc.,* 216 F Supp 709, 728 (ED Wash 1962), *aff'd sub nom. United Air Lines, Inc. v. Wiener,* 335 F2d 379, 404 (9th Cir), *cert. dismissed,* 379 US 951, 85 S Ct 452, 13 L Ed 2d 549 (1964); *Hart v. American Airlines, Inc.,* 61 Misc 2d 41, 304 NYS 2d 810, 814-15 (1969). *Contra, Nevarov v. Caldwell,* 161 Cal App 2d 762, 327 P2d 111 (1958); *Price v. Atchison, T. & S. F. Ry. Co.,* 164 Cal App 2d 400, 330 P2d 933 (1958).

experience or policy for accepting the suggestion that a decision rendered after a full and fair presentation of the evidence and issues should be considered either substantially suspect or infected with variables indicating the question might be decided differently in another go-around. Currie subsequently conceded the untenability of his initial position and retreated from it, stating that

"* * * so long as we retain sufficient faith in the institution of trial by jury to retain it for civil cases at all, what warrant is there for mistrusting the verdict for purposes of collateral estoppel when there is no suggestion that there has been compromise or other impropriety?" Currie, *Civil Procedure: The Tempest Brews,* 53 Calif L Rev 25, 36 (1965).

Thus, once it is accepted that the propriety of collateral estoppel is dependent upon the existence of a prior full and fair opportunity to present a case, there seems little reason to limit its application simply because there are multiple claimants in the picture. Although in our adversary system "there is always a lingering question whether the party might have succeeded in proving his point if he had only been given a second chance at producing evidence," *James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F2d 451, 463 (5th Cir), *cert. denied,* 404 US 940, 92 S Ct 280, 30 L Ed 2d 253 (1971), the unsubstantiated and conjectural possibility that a party might receive a favorable judgment somewhere down the road is an insufficient reason for refusing to apply collateral estoppel. As we stated in *In re Robert Neil Gygi,* 273 Or 443, 448-49, 541 P2d 1392 (1975),

"* * * the prior judgment is treated as conclusive, not because it is actually conclusive evidence of the ultimate truth as to those issues necessarily determined, but because of the public interest in the finality of judgments and in the efficient administration of justice. * * *."

The deference we lend prior adjudications is based on our reasonable confidence as to their correctness, rather than on a conviction of their unassailable truth.

One of the purposes of the doctrine is to protect the authority of judicial decisions, and this purpose would obviously be ill-served by refusing to give effect to a prior determination on the hypothetical possibility of a contrary decision if the case were continuously retried. *See* Hazard, *Res Nova in Res Judicata,* 44 S Cal L Rev 1036, 1041-044 (1971).

As the foregoing discussion would indicate, however, we are not free to disregard incongruous results when they are looking us in the eye. If the circumstances are such that our confidence in the integrity of the determination is severely undermined, or that the result would likely be different in a second trial, it would work an injustice to deny the litigant another chance. Thus, where it is apparent that the verdict was the result of a jury compromise, the losing party should not be precluded by the judgment. *Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F2d 532, 540-41 (2d Cir 1965), *cert. denied,* 382 US 983, 86 S Ct 559, 15 L Ed 2d 472 (1966); *Taylor v. Hawkinson,* 47 Cal 2d 893, 896, 306 P2d 797 (1957); Restatement (Second) of Judgments § 88(5) (Tent. Draft No. 2, 1975). In *Berner* the additional circumstance that the award of damages of $35,000 was so small in comparison to the $500,000 prayer of the complaint might well have caused the airlines to consider the judgment an actual "victory" and to accept that determination rather than incur the additional expense of appealing for a new trial to rectify whatever errors may have been committed during the course of the trial. It has also been held that if the prior determination was manifestly erroneous the judgment should not be given preclusive effect. *Henderson v. Bardahl Int'l Corp.,* 72 Wash 2d 109, 431 P2d 961, 966-67 (1967); Restatement (Second) of Judgments § 88(7) and comment *i.* (Tent. Draft No. 2, 1975). And the existence of newly discovered or crucial evidence that was not available to the litigant at the first trial would provide a basis for denying preclusion where it appears the evidence would have a significant effect on the outcome. *See Costello v. Pan American*

[ 108 ]

*World Airways, Inc.,* 295 F Supp 1384, 1389 (SD NY 1969); Restatement (Second) of Judgments § 88(7) and comment *i.* (Tent. Draft No. 2, 1975).

Those courts[3] and commentators[4] which have considered the question are in virtually unanimous agreement that where outstanding determinations are actually inconsistent on the matter sought to be precluded, it would be patently unfair to estop a party by the judgment it lost. Although Currie's initial perceptions provoked much discussion, the problem has remained largely academic because inconsistent verdicts are rarely encountered. Our research has disclosed only one case where inconsistent determinations by separate trial courts were asserted as a reason for denying collateral estoppel. In *Blumcraft of Pittsburgh v. Kawneer Co.,* 482 F2d 542 (5th Cir 1973), a patent infringement suit, the court held the plaintiff collaterally estopped, even though inconsistent determinations as to the patent's validity had been reached by separate courts. The court in that case read the U.S. Supreme Court's opinion in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 US 313, 91 S Ct 1434, 28 L Ed 2d 788 (1972), to require only one condition for the application of collateral estoppel, which was the existence of one full and fair opportunity to contest the patent's validity. Having concluded that the plaintiff had received such an opportunity in

---

[3] *See, e.g., Desmond v. Kramer,* 96 NJ Super 96, 232 A2d 470, 475 (1967).

[4] Currie, *Mutuality of Collateral Estoppel: Limits of the* Bernhard *Doctrine,* 9 Stan L Rev 281, 285 (1957); Eizenstat, *Mutuality: Is This Doctrine Really Necessary?,* 3 Harv Legal Comm 83, 93 (1966); Hazard, *Res Nova in Res Judicata,* 44 S Cal L Rev 1036, 1044 (1971); James, *Civil Procedure* 601-02, § 11.34 (1965) (the result is "offensive to the sense of justice"); Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties,* 68 Colum L Rev 1457, 1466-467 (1968) ("the common defendant should never be bound if he wins the first and then loses a later trial; there is no policy which commands that either judgment should be available to non-parties to the actions in such a situation. Both judgments should be ignored in the subsequent actions, not because of lack of mutuality or offensive-defensive distinctions, but because of common sense."); Note, *Res Judicata: The Shield Becomes a Sword,* 1964 Duke L J 402, 404. *But see* Comment, *Privity and Mutuality in the Doctrine of Res Judicata,* 35 Yale L J 607, 611-12 (1926).

the case it lost, the court held that collateral estoppel was mandated notwithstanding the existence of inconsistent determinations. Although the result may be justified in view of the peculiar nature of patent cases, the complexity of the determination, and the need for finality due to the prohibitive costs of such litigations as were discussed in *Blonder-Tongue,* we are unable to accept the court's reasoning in *Blumcraft.* As we discuss below, the existence of a full and fair opportunity to contest the issue in the adverse case is not the only criterion in this state for the application of estoppel. The court must also consider the fairness under all the circumstances of precluding a party.

■ We agree with the commentators to the extent at least that, where there are extant determinations that are inconsistent on the matter in issue, it is a strong indication that the application of collateral estoppel would work an injustice. There seems to be something fundamentally offensive about depriving a party of the opportunity to litigate the issue again when he has shown beyond a doubt that on another day he prevailed.[5] As stated by the Tentative Draft of Restatement (Second) of Judgments:

"* * * Giving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct. Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted. The inference, rather, is that the outcomes may have been based on equally reasonable resolutions of doubt as to the probative strength of the evidence or the appropriate application of a legal rule to the evidence. That such a doubtful determination has been given effect in the action in which it was reached does not require that be given effect against the party in litigation against another adversary." Restatement (Second)

---

[5] We do not mean to say that one favorable determination can never be overcome and estoppel never applied despite the number of subsequent determinations to the contrary.

of Judgments § 88(4), comment *f.* (Tent. Draft No. 2, 1975).

██  Plaintiffs in the present case contend that the determinations are not "inconsistent" because the issues in *Hesse* and *Pacific N. W. Bell* were not identical with the issues in *Sylwester.* It is true, as plaintiffs point out, that the phrasing of the allegations of negligence differed and that certain specifications of negligence were not submitted to the jury in *Sylwester.* We do not give much weight to variations in the wording of the pleadings, however, where essentially the same acts and omissions are alleged. To concentrate on slight discrepancies in the allegations of negligence would put defendant at a distinct disadvantage, for claimants could modify the wording after each judgment for defendant until one claimant prevailed, after which all remaining claimants could conform their complaints to that of the prevailing claimant and could then successfully claim that the prior judgments for defendant were based upon different issues.

The thrust of plaintiffs' argument must be that the jury in *Hesse* and the court in *Pacific N. W. Bell* adjudicated defendant negligent in respects which were not considered by the jury in *Sylwester.* The records of the cases, however, do not permit such a conclusion. Since the jury in *Hesse* returned a general verdict, we do not know in which respects it found defendant negligent and, given the substantial similarity of some of the allegations and the basic thrust of the negligence alleged, we are unable to conclude that it found defendant negligent on the basis of conduct not submitted to the jury in *Sylwester.* In *Pacific N. W. Bell* the court specifically found that the fire started in defendant's skip box; and that defendant was negligent in failing at the close of the preceding work day to remove combustible materials from its plant, in storing them in a box which was not a suitable receptacle or bin, in placing inflammable wastes in such a manner that defendant knew or should have known that any fire in the skip box was likely to spread to adjacent

structures, and in failing to empty the trash box before leaving the premises unattended for the night. Allegations of essentially the same conduct were submitted to the jury in *Sylwester* under proper instructions by the court, and the jury obviously found that defendant was not negligent in the respects specified by the court in *Pacific N. W. Bell.*[6]

[6]The allegations in the *Sylwester* complaint that correspond to the findings of the court in *Pacific N. W. Bell* allege that defendant was negligent:

" 4. In failing to remove combustible waste material from the building or to store them in suitable vaults in metal or metal-lined, covered receptacles or bins.

"* * * * *.

"17. In creating a hazardous condition which they knew or should have known, in the exercise of reasonable caution that, if a fire occurred, it would be reasonably probable that the fire would spread to adjoining premises and cause damage."

With respect to the fourth allegation, the court instructed the jury as follows:

"Now, in addition to common law negligence there is also the statutory negligence which consists of the violation of a law or city ordinance which for the safety or protection of others require a certain act or conduct, or which forbids certain acts or conduct. I will be from time to time referring to an ordinance of the City of Eugene known as 'The Fire Prevention Code of the City of Eugene', which ordinance was in effect prior to and at the time of the fire. Any violation of this ordinance in any of the particulars charged in the plaintiffs' Fourth Amended Complaint would constitute negligence on the part of the defendant. * * *.

"* * * * *.

"The plaintiffs have charged the defendant with negligence in failing to remove combustible waste material from the building or to store such material in suitable vaults or metal or metal-lined covered receptacles or bins. In this connection I instruct you that an ordinance of the City of Eugene entitled 'The Fire Prevention Code of the City of Eugene' contains this provision:

" 'No person making, using, storing or having in charge or under his control any combustible waste materials shall fail or neglect at the close of each day to cause all such materials which is not compactly baled and stacked in an orderly manner to be removed from the building, or stored in suitable vaults or in metal or metal-lined, covered receptacles or bins.'

"The defendant likewise had a duty to comply with the provisions of that ordinance."

The court also instructed the jury at length concerning defendant's duty with respect to the spread of the fire. The instruction concludes as follows:

"Now, the possessor of a building and premises, such as the defen-

Plaintiffs argue that the jury instructions create a misleading impression of the *Sylwester* case because the emphasis at trial concerned whether the fire started by spontaneous combustion, whereas the focus in *Pacific N. W. Bell* was not *how* the fire started but whether it *originated* in defendant's skip box, regardless of its cause. The court in *Sylwester* did, however, instruct the jury as to defendant's duty *regardless* of the cause of the fire. Where the matter was submitted, we cannot hazard the guess that the jury disregarded its duty and failed to consider the issue.

Plaintiffs also argue that if the prior results are inconsistent, such inconsistency should not be afforded much weight because the only relevant consideration is whether defendant had a full and fair opportunity to litigate the case which it lost, and contend that this condition has been amply satisfied. We first point out that both *Bahler* and our subsequent decisions have made clear that the question whether preclusion would be fair under all the circumstances is independent of, and in addition to, whether a party had a full and fair opportunity to present its case in the action resulting in an adverse judgment.[7] The latter consider-

dant in this case, owes the duty to others of nearby property to use reasonable care to keep and maintain its buildings and premises such as to guard against the outbreak of fire therein which if it occurs would, would with reasonable probability spread to and damage or destroy such adjacent property of others, and if the possessor of the building and premises fails to do so and a fire occurs which does spread to such adjacent property he is liable for the damages occasioned thereby. In other words, under the law, it is negligence for the possessor of property to permit his premises to be in such a condition or to tolerate use by others, such as transients or children, when he knows or reasonably should know that a fire started thereon would reasonably spread to and damage adjoining premises, and in such case the possessor of the premises is liable for the damage to the adjacent property if the fire does break out, irrespective of how the fire may have started."

[7] *Bahler v. Fletcher,* 257 Or 1, 19, 474 P2d 329 (1970). In *In re Robert Neil Gygi,* 273 Or 443, 447, 541 P2d 1392 (1975), we said that collateral estoppel "proceeds upon the premise that, *in the absence of* * * * *actual unfairness,* one who has had a full, complete and fair opportunity to litigate an issue upon which his rights depend, and has lost, need not be granted a second opportunity to contest that issue." (Emphasis added.)

*See also Williams v. Laurence-David,* 271 Or 712, 722-23, 534 P2d 173 (1975); *Meyers v. Burwell,* 271 Or 84, 87, 530 P2d 833 (1975).

ation relates to the circumstances affecting the preparation and conduct of the *trial* of the prior case and those that might bear upon the strategy and conduct of a second trial, whereas the former relates to variables (not necessarily connected to the actual trials) concerning the equity and justice of applying collateral estoppel in a given case.

In addition, plaintiffs' argument, if taken too literally, would prove too much, since defendant presumably also had a full and fair opportunity to litigate the case it *won*. Plaintiffs maintain, however, that the circumstances of the second *Pacific N. W. Bell* trial clearly indicate that it was the better tried of all the cases. They assert that the issues were more clearly defined, there was substantially more money at stake than in *Sylwester* ($146,935 compared to $21,355), defendant brought in additional experts to testify at considerable expense, the evidence regarding the fire, and particularly its origin, was more fully developed, and defendant was aware that the outcome might have a significant effect on the cases waiting in the wings.

The only relevant implication of plaintiffs' position is that, since the second *Pacific N. W. Bell* trial was more fully tried, the result must be substantially better than the jury verdict in *Sylwester*. We decline the invitation to decide which case was the better tried, in which case the evidence more truly presented the facts, and which "full and fair opportunity" by defendant resulted in the "correct" decision. The existence of conflicting determinations of similar issues demonstrates that different bodies can legitimately draw different conclusions. As noted previously, the application of collateral estoppel is a matter of policy, not a quest for certainty.

We conclude that the prior determinations are basically inconsistent and that the circumstances are such that it would be unfair to preclude defendants from relitigating the issue of liability.

Reversed and remanded.