Argued and submitted July 28, reversed and remanded November 26, 1997

Debra R. STANICH,
*Appellant,*

*v.*

PRECISION BODY AND PAINT, INC.,
an Oregon corporation;
and Maurice Monroe,
an individual,
*Respondents.*

(C950261CV; CA A93401)

950 P2d 328

Craig A. Crispin argued the cause for appellant. With him on the briefs were Steven T. Conklin and Crispin & Associates.

Jeffrey M. Batchelor argued the cause for respondents. With him on the brief were Paula A. Barran and Lane Powell Spears Lubersky.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff appeals from a judgment entered after the trial court granted defendants' motion for directed verdict on plaintiff's retaliatory discharge claims. ORS 659.410. Plaintiff also appeals from the trial court's granting of defendants' motion for summary judgment on her penalty wage claim, ORS 652.150, and from an award of attorney fees to defendants. ORS 659.121(1). We review for errors of law, ORS 19.125(1), and reverse and remand.

On appeal from a directed verdict, we view the evidence in the light most favorable to the nonmoving party, extending to that party the benefit of every reasonable inference that may be drawn from the evidence. *Shockey v. City of Portland*, 313 Or 414, 422-23, 837 P2d 505 (1992), *cert den* 507 US 1017, 113 S Ct 1813, 123 L Ed 2d 444 (1993). We also view the record on summary judgment in the light most favorable to the nonmoving party. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). The moving party has the burden of showing that there are no genuine issues of material fact. *Id.*

The facts, according to plaintiff, are as follows: Plaintiff worked as a marketing manager for Precision Body and Paint, Inc. (Precision), from March 1992 until August 1994. In the final year of her employment, plaintiff experienced increasing stress at work and began having stress-related health problems. In June 1994, she sought medical treatment for heart palpitations.

On August 16, 1994, plaintiff was in the front office talking to the office manager when the office telephone rang. A clerical worker, Nimmo, did not answer it because she was talking to another worker. Plaintiff directed her to answer the telephone. Nimmo refused, because she did not believe that plaintiff had the authority to tell her what to do. Nimmo became very upset and swore at plaintiff. Plaintiff also became very upset, exchanged heated words with Nimmo and returned to her office. At approximately four o'clock that afternoon, plaintiff talked to her supervisor, defendant Maurice Monroe, about some work files. Neither plaintiff nor Monroe mentioned the altercation between plaintiff and

Nimmo. Plaintiff left work shortly before five o'clock. She saw Monroe and the company controller, Wayne Hess, as she passed through the front office on her way out.

Plaintiff was so upset about the altercation with Nimmo that she decided to see a physician the next day. At about seven o'clock the next morning, August 17, plaintiff called Ron Reichen, co-owner of Precision, and told him that she would not be at work that day, that she would be seeing a doctor and that she intended to file a workers' compensation claim for work-related stress. Reichen replied, "okey-dokey." Plaintiff saw her physician on August 17 and was taken off work for stress-related anxiety and depression. Plaintiff immediately notified defendants of her status. On August 18, defendants mailed plaintiff a termination letter and a final paycheck, which she received on August 19. The termination letter stated that her final paycheck was enclosed, that defendants "regret that [they were] unable to deliver it directly to [her] on the 16th," and that they "understand from [her] statements to other members of Precision Body & Paint" that she knew that defendants had decided to fire her.

In late August, plaintiff filed a workers' compensation claim for mental disorder caused by stress. ORS 656.802(1).[1] Defendants denied the claim. At the hearing, plaintiff contended that her employment conditions were the major contributing cause of her mental disorder.[2] ORS 656.802(2)(a).[3] Defendants responded that plaintiff's stress was the result of her fear that she was going to be fired. Defendants presented evidence that plaintiff told someone that she had overheard Monroe and Hess talking on August 16 about firing her, that plaintiff told someone that she saw

---

[1] ORS 656.802(1) provides, in part:

"(a) As used in this chapter, 'occupational disease' means * * *:

"* * * * *

"(B) Any mental disorder, whether sudden or gradual in onset, which requires medical services or results in physical or mental disability or death."

[2] Neither party provided us with the record of the workers' compensation proceeding. Our understanding of the events of that proceeding comes only from the opinion of the workers' compensation administrative law judge.

[3] ORS 656.802(2)(a) provides:

"The worker must prove that employment conditions were the major contributing cause of the disease."

Hess with what she thought was her final paycheck on August 16 and that on August 16 plaintiff told someone that she thought her job was in jeopardy. Plaintiff testified that she did not know or suspect that she was going to be fired on August 16, and her attorney argued that defendants' witnesses were conspiring to falsify evidence of the date on which she was fired. The administrative law judge (ALJ) held that plaintiff's mental disorder was not compensable under ORS 656.802(3)(b).[4] She reasoned:

"[Plaintiff's] stress arose from her interpersonal conflict at work, which is not compensable under the statute as it is generally inherent in every working situation; or [plaintiff's] fear of being fired which also falls within one of the exceptions of compensability. * * * *[T]he major cause of [plaintiff] seeking medical treatment for her stress was her knowing that she was going to be fired.* * * * I saw no evidence of a conspiracy by the employer's witnesses, as suggested by [plaintiff's] attorney. It was clear from the evidence that [plaintiff] was fired on August 16, 1994, over one more interpersonal conflict involving [plaintiff] and another employee."

(Emphasis supplied; citations omitted.) Plaintiff appealed to the Workers' Compensation Board but withdrew that appeal and pursued this claim for retaliatory discharge.

Plaintiff alleges (1) that defendants terminated her in retaliation for filing a workers' compensation claim in violation of ORS 659.410(1);[5] (2) that Monroe aided and abetted her unlawful termination, in violation of ORS 659.030(1);[6]

---

[4] ORS 656.802(3) provides, in part:

"Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

"* * * * *

"(b) The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation * * * or cessation of employment * * *."

[5] ORS 659.410(1) provides, in part:

"It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or of ORS 659.400 to 659.460 * * *."

[6] ORS 659.030(1) provides, among other things, that it is an unlawful employment practice:

and (3) that defendants failed to pay her wages due immediately upon termination, in violation of ORS 652.150.[7] Defendants moved for summary judgment on all three claims. The trial court granted summary judgment on the penalty wage claim and ordered the other two claims to be tried to a jury. After plaintiff's case-in-chief, defendants moved for directed verdicts on the ground of issue preclusion, or, in the alternative, because plaintiff had not proven a *prima facie* case. The court granted the motion on the ground that issue preclusion bars plaintiff's claims. The court entered judgment for defendants and awarded them attorney fees.

■ We first consider whether the trial court erred in granting defendants' motion for directed verdicts on plaintiff's retaliatory discharge claims on the ground of issue preclusion. The doctrine of issue preclusion bars relitigation of an issue in a subsequent proceeding if the following five requirements are satisfied: (1) The issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded had a full and fair opportunity to be heard on the issue; (4) the party sought to be precluded was a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which we will give preclusive effect. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993). Although the party asserting issue preclusion bears the burden of proof on all five requirements, the party against whom preclusion is sought has the burden of showing that it did not have a full and fair opportunity to litigate. *State Farm v. Century Home*, 275 Or 97, 105, 550 P2d 1185 (1976). Whether the elements of issue preclusion have been established is a question of law. *Id.* An administrative determination can be used as a basis

---

"(g) For any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under ORS 659.010 to 659.110 and 659.400 to 659.545 or to attempt to do so."

[7] ORS 652.150 provides, in part:

"If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 * * *, then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid * * *."

for issue preclusion in a later civil proceeding. *Chavez v. Boise Cascade Corporation*, 307 Or 632, 634, 772 P2d 409 (1989).

As explained above, in the workers' compensation proceeding plaintiff contended that her working conditions caused her mental disorder. Defendants responded that plaintiff's stress was the result of her fear that she was going to be fired. Defendants presented evidence that they had decided to fire plaintiff several times before. Defendants also presented evidence that plaintiff told someone that she had overheard Monroe and Hess talking on August 16 about firing her, that plaintiff told someone that she saw Hess with what she thought was her final paycheck on August 16, and that on August 16 plaintiff told someone that she thought her job was in jeopardy. Plaintiff testified that she did not know or suspect that she was going to be fired, and her attorney argued that defendants' witnesses conspired to prove otherwise. Based on the evidence, the ALJ concluded that "the major cause of [plaintiff] seeking medical treatment for her stress was her knowing that she was going to be fired" and that plaintiff's "fear of being fired * * * falls within one of the exceptions of compensability." ORS 656.802(3)(b).[8]

Plaintiff's theory to support her claims of retaliatory discharge is that defendants fired her in retaliation for filing a workers' compensation claim. Defendants respond that they fired plaintiff for a legitimate reason before she filed her workers' compensation claim. The ALJ made two findings central to this dispute. First, the ALJ found that "[i]t was clear from the evidence that [plaintiff] was fired on August 16, 1994." According to the trial court, that finding is essential to the ALJ's decision, and, consequently, plaintiff is barred by the doctrine of issue preclusion from relitigating that fact. That fact defeats plaintiff's retaliatory discharge claims because she filed her workers' compensation claim after August 16. If plaintiff is precluded from relitigating whether she was fired on August 16, the trial court did not err in granting defendants' motion for directed verdict.

---

[8] In light of the ALJ's finding that the major cause of plaintiff's seeking medical treatment was her knowing that she was going to be fired, we do not address plaintiff's argument that the ALJ's decision rested on two grounds and, therefore, was ambiguous.

Defendants contend that issue preclusion also bars plaintiff from relitigating the ALJ's second finding, namely, that "the major cause of [plaintiff] seeking medical treatment for her stress was her knowing that she was going to be fired." If plaintiff is precluded from litigating whether she knew on August 16 that she was going to be fired, that finding—that she knew on August 16 that her job was in jeopardy—supports defendants' theory that they did not fire her in retaliation for filing a workers' compensation claim, but for a legitimate reason. In that case, plaintiff may argue only that defendants merely threatened to fire her on August 16 and that they carried out their threat to fire her because she filed a workers' compensation claim.

Because it is dispositive to the determination of whether plaintiff is precluded from relitigating the ALJ's first finding—that plaintiff was fired on August 16—we first address the second requirement for preclusion under *Nelson*: Whether the issue sought to be precluded in the second proceeding actually was litigated and was essential to a final decision on the merits in the first proceeding. *Nelson*, 318 Or at 104.

At the workers' compensation hearing, the ALJ was required to decide whether plaintiff's mental disorder claim was compensable. In making that determination, the ALJ was required to determine whether events occurred on August 16 that put plaintiff on notice that her job was in jeopardy, whether those events caused plaintiff to fear being fired and whether plaintiff's fear of being fired caused her mental disorder. However, in determining whether plaintiff's mental stress claim was compensable under ORS 656.802(3)(b), the ALJ was *not* required to decide the legal import of those events, that is, whether they resulted in her termination. A finding that plaintiff feared being fired on August 16 is consistent with a finding that she actually was terminated on August 19, or not fired at all. Accordingly, the date on which plaintiff was fired simply was not essential to the ALJ's determination that plaintiff's mental disorder was caused by her fear of being fired. Because the finding that plaintiff was fired on August 16 was not essential to the ALJ's decision regarding the compensability of plaintiff's claim, the second requirement for issue preclusion under *Nelson* has not been

satisfied. Consequently, the trial court erred in holding that plaintiff is precluded from litigating in this proceeding the question of whether she was fired on August 16.

However, the finding that plaintiff knew on August 16 that her job was in jeopardy was essential to the ALJ's determination that plaintiff's mental disorder was caused by her fear of being fired, and that, consequently, her mental disorder was not compensable. Precluding plaintiff from relitigating that fact will not entitle defendants to a directed verdict on the ground of issue preclusion because plaintiff's knowledge that her job was in jeopardy does not resolve the question of defendants' motive for firing her. However, on remand, defendants likely will seek to preclude plaintiff from relitigating whether she knew her job was in jeopardy because that knowledge lends support to defendants' contention that they had a legitimate reason for firing her. For that reason we address the issue here. Therefore, we must determine whether the other *Nelson* requirements for issue preclusion are satisfied and, hence, bar plaintiff from relitigating that fact.

The first *Nelson* requirement is that the issue in the two proceedings is identical. *Nelson,* 318 Or at 104. Plaintiff concedes that the "underlying factual issue the ALJ decided was the cause of plaintiff's stress." The ALJ found that the cause of plaintiff's stress was her knowledge on August 16 that her job was in jeopardy. That is the same fact on which defendants rely in this civil action to rebut plaintiff's retaliatory discharge claim by contending that they fired plaintiff for a legitimate reason. Consequently, the first requirement for preclusion under *Nelson* is satisfied.

The third requirement under *Nelson* is that plaintiff had a full and fair opportunity to be heard on the issue in the prior proceeding. *Id.* Plaintiff contends that this requirement is not satisfied because she had no incentive in the workers' compensation proceeding to litigate, among other things, whether defendants' employees were telling the truth when they testified that plaintiff knew on August 16 that her job was in jeopardy.

Preclusive effect may be given to essential[9] findings in a formal administrative adjudication if the parties had a full opportunity and the incentive to contest the point on a record that was subject to judicial review. *Chavez*, 307 Or at 635. Plaintiff has the burden to "bring to the court's attention circumstances indicating the absence of a full and fair opportunity to contest the issue in the first action." *State Farm*, 275 Or at 105.

In this case, defendants sought to defeat plaintiff's workers' compensation claim filed pursuant to ORS 656.802 *et seq* by presenting testimony that plaintiff's stress was caused by her fear of being fired. Consequently, to meet her burden of proving that her claim was compensable, plaintiff had a strong incentive to establish that she did not know on August 16 that her job was in jeopardy. Plaintiff does not argue that defendants surprised her with their defense, that the ALJ denied a motion for a continuance in order to give plaintiff time to rebut the defense or that she was not allowed to present evidence to rebut the defense. Neither has plaintiff provided any evidence that would assist her in meeting her burden of showing that she did not have a full and fair opportunity to litigate whether she knew that her job was in jeopardy when she filed her workers' compensation claim. *Nelson*, 318 Or at 104. Her contention that "[i]t is unfair and unjust to now hold that the limited testimony and evidence offered" at the workers' compensation hearing precludes relitigation of those issues must fall on deaf ears.

Plaintiff's other ground for arguing that the ALJ's finding is not entitled to preclusive effect is that the record of the workers' compensation hearing was not subject to judicial review. Plaintiff is wrong. The ALJ's opinion and order was subject to review both by the Workers' Compensation Board, ORS 656.295, and this court, ORS 656.298. Plaintiff withdrew her appeal of the ALJ's opinion and order. Consequently, the ALJ's findings are final as between plaintiff and defendants. *Washington Cty. Police Officers v. Washington Cty.*, 321 Or 430, 437, 900 P2d 483 (1995).

---

[9] In *Chavez*, the court used the word "necessary" to describe findings that will be given preclusive effect. *Chavez*, 307 Or at 635. We assume that the word "necessary" is synonymous with the word "essential" in *Nelson*. 318 Or at 104.

The fourth requirement for issue preclusion under *Nelson* is that the party sought to be precluded was a party to the prior proceeding. *Nelson*, 318 Or at 104. It is undisputed that that requirement is satisfied in this case.

The final requirement for issue preclusion is that the prior proceeding is the type of proceeding to which this court will give preclusive effect. *Id.* In *Chavez*, the Supreme Court reiterated that " 'an administrative determination can be used as a basis for [issue preclusion] in a later civil jurisdiction proceeding.' " *Chavez*, 307 Or at 634-35. However, in footnote 1 of *Chavez*, the court stated:

> "This case presents no claim of a right under Article VII, section 3, of the Oregon Constitution to a jury determination of disputed facts. *Cf. Parklane Hosiery Co. v. Shore*, 439 US 322, 99 S Ct 645, 58 L Ed 2d 552 (1979) (despite the federal Seventh Amendment, juries historically were precluded from retrying issues decided in prior equity proceedings); *id.*, 439 US at 337 (Rehnquist, J., dissenting)."

*Id.* at 634. Plaintiff relies on that footnote for her argument that "the procedure in an administrative proceeding cannot substitute for a jury trial" because administrative process "is expedited and allows evidence inadmissable at trial." She contends that applying the doctrine of issue preclusion to facts found in the workers' compensation proceeding is tantamount to denying her a jury trial of disputed facts to which she has a right under Article VII, section 3, of the Oregon Constitution. Even assuming there is merit to plaintiff's argument, she raises it for the first time in her reply brief, having not argued the point below. Consequently, we do not consider the argument. ORAP 5.45(2); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991).

To summarize: We conclude that the trial court erred in granting defendants' motion for directed verdict on the ground that plaintiff is barred by the doctrine of issue preclusion from relitigating whether she was fired on August 16, because that finding was not essential to the ALJ's determination that her workers' compensation claim is not compensable. However, on remand, plaintiff is barred from relitigating whether she knew on August 16 that her job was in jeopardy.

Defendants argue that there is an alternative ground for affirming the trial court's granting of their motion for directed verdict, because they also argued that plaintiff did not present a *prima facie* case of retaliatory discharge. *See Allen v. The Heil Company*, 285 Or 109, 122, 589 P2d 1120 (1979) ("[W]hen the motion states alternative grounds, we ordinarily consider the other grounds to determine if the motion should have been granted upon the alternative grounds."); *Rees v. State of Oregon*, 133 Or App 154, 156, 890 P2d 1012, *rev den* 321 Or 94, 893 P2d 540 (1995) (same). Viewing the evidence in the light most favorable to plaintiff, *Shockey*, 313 Or at 422-23, we disagree. A *prima facie* case of retaliatory discharge under ORS 659.410 is established by proving: (1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system. ORS 659.410(1).

Although plaintiff is precluded from relitigating the fact that she knew on August 16 that her job was in jeopardy, it is uncontroverted that defendants had decided to fire her on other occasions but had changed their minds and did not do so. It also is uncontroverted that plaintiff notified defendants on the morning of August 17 that she intended to file a workers' compensation claim and that plaintiff's termination letter was dated August 17 and postmarked August 18. In addition, plaintiff presented evidence that defendants conspired to falsify the date of her termination. That evidence is sufficient to establish a *prima facie* case of retaliatory discharge on a theory that defendants carried out their decision to fire plaintiff because she filed a workers' compensation claim. As explained above, because plaintiff is not precluded from relitigating the issue of whether she was fired on August 16, the trial court erred in granting defendants' motion for directed verdicts on plaintiff's discrimination claims.

Finally, we address plaintiff's argument that the trial court erred in granting defendants' motion for summary judgment on her penalty wage claim. ORS 652.140(1); ORS

652.150. The trial court concluded that defendants are entitled to summary judgment on that claim because there are no genuine issues of material fact. ORS 652.150 provides:

> "If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for such non-payment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days from the due date; and provided further, the employer may avoid liability for the penalty by showing financial inability to pay the wages or compensation at the time they accrued."

Plaintiff argues that notwithstanding defendants' contention that she was fired on August 16 and knew that she was fired on that date, they concede that she was not paid until August 19. Defendants respond that although they decided to fire plaintiff on August 16, they did not "formally" fire her until August 19. As we have explained above, we conclude that there is a genuine issue of material fact about the date on which plaintiff was fired. Nonetheless, defendants argue, they gave plaintiff two weeks severance pay—August 17 to August 31—so they paid her through August 19 and, hence, are not subject to a penalty under ORS 652.150. We already have rejected a similar argument:

> "Defendant contends that the amounts it voluntarily paid * * * should be credited against penalties otherwise due for its wilful failure to pay plaintiff's earned and unpaid wages * * *. * * * There is no evidence that defendant intended its payments to 'satisfy its wage-claim obligations' or that plaintiff accepted the payments with that understanding."

*Kling v. Exxon Corp.*, 74 Or App 399, 403, 703 P2d 1021 (1985). Defendants seek to limit *Kling* to circumstances in which the voluntary payment is the result of a separate agreement. They provide no explanation for why the *Kling* rule, which requires that voluntary overpayments reflect an intent to satisfy wage-claim obligations, must be so limited. As a matter of law, defendants are not entitled to summary

judgment on that theory. Defendants must establish at trial that plaintiff was compensated for all wages due within one business day of being fired or that the amount given to her on August 19 was intended to compensate her for all wages, both regular and penalty.

In light of this disposition, the award of attorney fees is reversed.

Reversed and remanded.