430

Argued and submitted January 5, decision of the Court of Appeals affirmed in part and reversed in part; order of the Employment Relations Board affirmed August 24, 1995

WASHINGTON COUNTY POLICE
OFFICERS ASSOCIATION,
*Respondent on Review,*

*· v.*

WASHINGTON COUNTY,
*Petitioner on Review,*

*and*

EMPLOYMENT RELATIONS BOARD,
*Intervenor/Petitioner on Review.*

(ERB UP-42-92; CA A75956; SC S41346, S41350)

900 P2d 483

John M. Junkin, Washington County Counsel, Hillsboro, argued the cause and filed the petition for petitioner on review.

Philip Schradle, Assistant Attorney General, Salem, argued the cause and filed the briefs for intervenor/petitioner on review. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

William B. Aitchison, Portland, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.**

GILLETTE, J.

** Durham, J., did not participate in this opinion.

Unis, J., dissented and filed an opinion.

## GILLETTE, J.

■ In this labor relations case, the Washington County Police Officers Association (the Association) filed two unfair labor practice complaints against Washington County (County) for unilaterally adopting a Complaint Investigations Procedures Manual that allegedly infringed on employees' rights to union representation during investigatory interviews.[1] We are asked to decide whether the Employment Relations Board (ERB) correctly dismissed those complaints, without a hearing, for failure to allege an "issue of fact or law." ORS 243.676(1)(b). The Court of Appeals held that ERB correctly dismissed one complaint, but incorrectly dismissed the other; it remanded the latter complaint to ERB for further proceedings. *Washington Cty. Police Officers v. Washington Cty.*, 127 Or App 545, 550, 873 P2d 432 (1994). We allowed review to determine whether an amendment to the County's Complaint Investigations Procedures Manual, adopted in response to an order of ERB, was subject to immediate collective bargaining, before implementation of the amendment, by the statutes requiring collective bargaining "with respect to employment relations." ORS 243.672(1)(e), 243.650(4), 243.650(7).[2] For the reasons set

---

[1] ORS 243.672(1) provides in part:

"It is an unfair labor practice for a public employer * * * to do any of the following:

"(a) Interfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662.

"* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive representative."

ORS 243.662 provides:

"Public employees have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with their public employer on matters concerning employment relations."

[2] ORS 243.650 provides in part:

"(4) 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession.

"* * * * *

out below, we hold that it was not. The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the Employment Relations Board is affirmed.

The proceedings before this court stem from a lengthy history of litigation between the parties, involving three decisions of ERB and two separate unfair labor practice complaints filed by the Association. The battle began in February 1990, when the Association filed a complaint with ERB alleging that the policies and practices of the County with respect to the participation of Association representatives in investigatory interviews conducted by the County constituted unfair labor practices in violation of ORS 243.672(1)(a). The Association prevailed in that ERB proceeding. The County was ordered to cease and desist and to modify its written policy "consistent" with ERB's opinion and order.[3] *Washington County Police Officers Association v. Washington County*, 12 PECBR 693, 706-07 (1991) (*WCPOA I*).

The Association, concerned that ERB had misstated Oregon law with respect to an employee's right to consult with Association representatives during investigatory interviews, petitioned ERB for reconsideration of its opinion.[4]

---

"(7) 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

[3] After a lengthy opinion setting forth its views with respect to the minimum rights to representation in investigatory interviews afforded by Oregon law, ERB issued the following order:

"1. The County shall cease and desist from instructing Association representatives to be silent during investigatory interviews of Association members and [from] limiting the role of the Association representative to that of an observer during such interviews.

"2. The County shall cease and desist from interfering with employees' representational rights in the Manual by relegating the employee representative to the role of an observer during any interview or meeting to which the employee's right to representation attaches. The County shall modify its Manual within 14 days of this Order consistent with this Order."

*Washington County Police Officers Association v. Washington County*, 12 PECBR 693, 706-07 (1991).

[4] We emphasize that this case is a dispute between an employer and a collective bargaining representative. No individual employee is a party to the case, and no employee's individual rights are in issue.

ERB granted that petition and held that Oregon law does not provide an employee the right to consult with a union representative during an investigatory interview. *Washington County Police Officers Association v. Washington County*, 12 PECBR 693, *on reconsideration*, 12 PECBR 727, 729 (1991) (*WCPOA II*). No petition for judicial review was filed with respect to either *WCPOA I* or *II*, and we do not address the correctness of either. The dispute before this court, although connected to *WCPOA I* and *II*, is a separate matter. We turn now to that dispute.

Immediately after ERB decided *WCPOA II*, the County chose to implement the directive from ERB in *WCPOA II* by promulgating an amended Complaint Investigations Procedures Manual. The new manual adopted, almost verbatim, the minimum representation rights required by ORS 243.672(1)(a), as decided and enumerated by ERB in its unappealed decisions, *WCPOA I* and *II*.

On March 20, 1992, the Association filed a complaint alleging two unfair labor practices by the County: one aimed at the content of the manual and the other aimed at the procedure by which the manual had been adopted. The first allegation was that the amended policy violated ORS 243.672(1)(a) by not affording to employees a right to consult with a labor representative during investigatory interviews. The second allegation was that, because the procedures used for the investigation of disciplinary complaints were subject to mandatory collective bargaining, the County had violated ORS 243.672(1)(e) when it promulgated the amended policy "unilaterally."

ERB dismissed the entire complaint for failure to state issues of fact or law. *Washington County Police Officers' Association v. Washington County*, 13 PECBR 627 (1992) (*WCPOA III*). ERB dismissed the first theory, relating to the content of the manual, on the ground that the Association was alleging a violation of a right that ERB had held to be non-existent in *WCPOA I* and *II* and, because those two decisions had not been appealed, no issue of fact or law existed. ERB dismissed the second theory, *viz.*, that collective bargaining was required before an amendment to the manual could be adopted, because the County had done nothing, in ERB's opinion, but comply with ERB's earlier affirmative order for

relief. ERB did not reach the question whether, absent claim preclusion, employee rights to union representation in investigatory interviews were otherwise subject to mandatory bargaining. *WCPOA III*, 13 PECBR at 634 n 1.

On judicial review, the Court of Appeals affirmed ERB's dismissal of the first theory in the Association's complaint, but reversed the dismissal of the second theory. It then remanded the case to ERB for a determination whether the policy reflected in the manual was subject to mandatory bargaining. For the reasons that follow, we affirm the decision of the Court of Appeals with respect to the first theory, but reverse as to the second.

## ISSUE PRECLUSION

The Court of Appeals held that the Association's first theory was barred by the common law doctrine of issue preclusion. *Washington Cty. Police Officers*, 127 Or App at 547. We agree. This court has held:

"If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

"1. The issue in the two proceedings is identical. *North Clackamas School Dist. v. White*, [305 Or 48, 53, 750 P2d 485, *modified on other grounds* 305 Or 468, 752 P2d 1210 (1988)]; *State Farm Fire & Cas. v. Reuter*, [299 Or 155, 158, 700 P2d 236 (1985)].

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding. *Heller v. Ebb Auto Co.*, 308 Or 1, 5, 774 P2d 1089 (1989).

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue. *Chavez v. Boise Cascade Corporation*, 307 Or 632, 635, 772 P2d 409 (1989); *State v. Ratliff*, [304 Or 354, 258, 744 P2d 247 (1987)].

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding. *North Clackamas School Dist. v. White, supra*, 305 Or at 53; *State Farm Fire & Cas. v. Reuter, supra*, 299 Or at 159.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect. *North Clackamas School Dist. v. White, supra*, 305 Or at 52; *State v. Ratliff, supra*, 304 Or at 258."

*Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (footnote omitted). In the present case, there is no dispute concerning the first and fourth elements of issue preclusion, *viz.*, identity of issue and identity of party. The legal validity of the Court of Appeals' determination depends on whether the second (actually litigated and essential to final decision), third (full and fair opportunity to be heard), and fifth (prior proceeding of type that will be given preclusive effect) elements of issue preclusion in *Nelson* were satisfied.

The second element of issue preclusion, requiring that the issue actually was litigated and essential to a final decision on the merits in the prior proceeding, was satisfied by ERB's decisions in *WCPOA I* and *II*. ERB's interpretation of the rights provided by ORS 243.672(1)(a) was essential to its final decisions on the merits in those proceedings. The issue in *WCPOA I* was whether the County had violated an employee's rights under ORS 243.672(1)(a). The *extent* of those rights was central to that dispute. The Association now argues that the enumeration of rights in *WCPOA I* was "*dictum*" and, because it was "*dictum*," the Association was not required either to accept that enumeration or to seek judicial review of it. We do not agree with the Association's characterization of the rights enumerated in *WCPOA I*. Moreover, in *WCPOA II*, the primary question before ERB was the extent of an employee's right to consult with a labor representative during an investigatory interview. The Association specifically argued that issue and *requested* a ruling. Thus, the Association's argument that the issue of an employee's rights to representation by the Association in an investigatory interview was not litigated, or not essential to ERB's decision, is not well taken.

The third element of issue preclusion, requiring that the party sought to be precluded had a full and fair opportunity to be heard on the issue to be precluded, was satisfied when ERB reconsidered *WCPOA I*. In their petition, the Association urged

"that the Board reconsider its decision with respect to the role of a labor representative during a[n investigatory] hearing. In particular, the Association believes it is appropriate for a labor representative to 'counsel' an employee during a[n investigatory] interview."

*See WCPOA II*, 12 PECBR at 727 (quoting petition). The petition for reconsideration, along with the legal points and authorities contained therein, which were considered and dealt with on the merits in a reconsideration hearing, constituted a full and fair opportunity to present arguments on that legal issue. The Association's argument to the contrary is not well taken.

The fifth element of issue preclusion, requiring that the prior proceeding be "the type of proceeding to which this court will give preclusive effect," also was satisfied. This court discussed the preclusive effect that an agency proceeding could have on further proceedings of the same agency in *North Clackamas School Dist.*, 305 Or at 52. After quoting several commentaries, this court concluded:

> "We see no reason why the rules of res judicata should not apply in this case. The same quality of proceedings and opportunity to litigate is present in both proceedings. If the incentive to litigate the question is substantially the same, the procedural requisites for application of the issue preclusion rule would appear to exist. *See* Restatement (Second) of Judgments, Introductory Note to Ch 6 at 265 (1980)."

*Id.* at 52.

This case is no different. The parties had a demonstrated incentive to litigate the representational rights afforded by ORS 243.672(1)(a) in *WCPOA I* and *II*. This is demonstrated particularly by the Association's petition for reconsideration of ERB's limitation on the "right to consultation." Failure to seek judicial review of the resulting decision of ERB as to those representational rights made them final as between these parties and precludes the Association from raising the same issue here.

We hold that ERB and the Court of Appeals correctly determined that the Association's first theory in its unfair labor practice complaint, relating to the contents of the revised manual, presented no issue of fact or law. We now review ERB's dismissal of the Association's second theory.

## BARGAINING AFTER AN ERB ORDER

As noted, the Association argued that the contents of the manual were a mandatory subject of collective bargaining. From that premise, the Association reasoned that, whatever the county's reasons for changing the manual might be, it could not make those changes without first bargaining collectively with the Association. ERB's decision to dismiss that theory did not rely on any specific "exception" to collective bargaining delineated in the collective bargaining statutes. Neither did it rely on past decisions of this court on the subject of mandatory collective bargaining. ERB instead appears to have rested its decision on two separate legal contentions not previously considered by this court.

First, ERB appeared to assert that an employer has no duty to bargain *whenever* changes in employment practices are made in order to bring the employer into compliance with the minimum requirements of law. It held:

> "An employer has no obligation to bargain over changes made to meet minimum legal requirements. * * * If an employer were notified, or itself determined that it had violated minimum wage requirements, an employer would have to raise wages to the minimum wage and would not be obligated to bargain."

*WCPOA III*, 13 PECBR at 633-34 (footnote omitted).

■■ The Court of Appeals criticized and reversed ERB's dismissal on that basis. As stated by the Court of Appeals:

> "To use ERB's example, an employer that wishes to cure its violation of the minimum wage law must comply with the minimum wage law *and* any bargaining duty imposed by ORS 243.672(1)(e). *The minimum wage law does not require an employer to make unilateral policy changes in wages in order to attain compliance.* In ERB's hypothetical, the employer's conundrum is the result of its potential violation of both the minimum wage law and the bargaining law, and it cannot excuse its violation of one law by pointing to a perceived 'need' to violate the other. Employer's difficulties in achieving timely compliance with all applicable laws in this context may justify some adjustment of remedy by ERB, but they do not excuse employer from liability for violating its legal duties."

*Washington Cty. Police Officers*, 127 Or App at 548 n 1 (emphasis supplied). We agree with the Court of Appeals that ERB's first basis for dismissal is not sufficient. The fact that two legal duties may collide, or appear in conflict, does not excuse an employer from making good faith efforts to comply with those duties, or excuse ERB from enforcing them. We agree with the Court of Appeals, therefore, that dismissal on that ground alone would have been reversible error — but ERB did not rely solely on that ground.

ERB also relied on its authority to order affirmative relief necessary to effectuate the purposes of the public employees' collective bargaining law (PECBA).[5] ERB asserted that an obligation to bargain over the implementation of an ERB order would delay compliance with the law and defeat the immediate affirmative relief required for an unfair labor practice. It held:

> "To the extent that the Association contends that the County violated ORS 243.672(1)(e) by unilaterally changing conditions of employment when revising the manual, we reject that contention. When revising the manual, the County did nothing more than comply with the minimum legal requirements regarding employee rights to union representation in investigatory interviews, as set forth in *[Washington County Police Officers Association v. Washington County*, 12 PECBR 693, *on reconsideration*, 12 PECBR 727 (1991)]. In that case, we held that a prior edition of the manual infringed on employee rights and violated subsection (1)(e) and ordered the County to modify its manual.

> "* * * If we were to adopt the Association's argument, we would have to hold that an employer's modification of an unlawful practice would not be permitted, unless agreement were reached or the PECBA dispute resolution process was completed. Such a holding would require an employer to

---

[5] ORS 243.676(2) provides in part:

"Where, as a result of the hearing required pursuant to subsection (1)(c) of this section, the board finds that any person named in the complaint has engaged in or is engaging in any unfair labor practice charged in the complaint, the board shall:

"* * * * *

"(c) Take such affirmative action, including but not limited to the reinstatement of employees with or without back pay, as necessary to effectuate the purposes of ORS * * * 243.650 to 243.782 * * *."

continue its unlawful conduct while bargaining was completed. We will not require employers to engage in unlawful conduct."

*WCPOA III*, 13 PECBR at 633.

We agree with ERB's contention that to require collective bargaining, after an ERB order, *about a specific directive in that order*, would be inconsistent with ERB's authority — indeed duty — to order immediate affirmative relief. ORS 243.676(2)(c) *requires* ERB, on the finding of an unfair labor practice, to order that the person cease and desist from the unfair labor practice *and* order "such affirmative action * * * as necessary to effectuate the purposes of [ORS 243.650 to 243.782]." To permit a delay in the implementation of a specific affirmative order for immediate relief would thwart the affirmative relief required by ORS 243.676(2)(c).

■ An ERB order giving an employer broad discretion over the time or method of compliance with that order does not necessarily extinguish any pre-existing duty to bargain over decisions affecting employee relations.[6] But an order requiring a specific act, or requiring immediate compliance, cannot, if it is to be effective, be subjected to an indeterminate delay by a party's insistence that it be bargained over *before implementation*.[7] We are left, then, with a question of interpretation, *viz.*, whether the ERB order, requiring the County to amend its policy manual "within 14 days of this Order [and] consistent with this Order," left the time or method of compliance up to the employer. As set forth below, we hold that it did not.

Three circumstances are dispositive in this inquiry. First, the Association, in its original unfair labor practice complaint against the County, sought specific affirmative

---

[6] ERB itself made this point in *WCPOA III*, 13 PECBR at 634 n 1:

"Of course, an employer that implements a change that does more than the law requires would be obligated to bargain over the change. But that situation is not present here."

[7] Of course, our ruling in this regard does not prevent either side from seeking to bargain over any appropriate subject of bargaining at any time. We hold only that bargaining may not delay implementation of certain specific orders of ERB, such as the one at issue here. We also recognize that specific affirmative relief by order of ERB is not always necessary, or appropriate, to effectuate the purposes of ORS 243.650 to 243.782.

relief in the form of an ERB order "[r]equiring that Washington County amend its Complaint Investigation Procedures Manual to Comply with State law concerning rights of Association members to Association representation during investigatory interviews." *WCPOA I*, UP-15-90 (Complaint, February 2, 1990). Second, ERB specifically ordered the County to "modify its Manual within 14 days" of the ERB order, to be "consistent with [that] Order." The order is specific, both as to time and method of compliance. The main body of the ERB opinion and order succinctly sets out the state law concerning the rights requested, and the order required the modification to be complete within 14 days of the ERB order. Any reasonable person, having read the unfair labor practice complaint, the opinion, and the affirmative order, would understand the order to direct the County to amend its manual to meet minimum state law requirements and would know *specifically* what, in the view of ERB, those minimum requirements were.

Finally, and even if there were some room for debate over the scope of ERB's order in *WCPOA I*, the ERB order in *WCPOA III* definitively interpreted the order in question as an order to adopt affirmatively the state law requirements outlined in *WCPOA I* and *II* into the County's manual. ERB held:

> "In short, [the] manual provisions that the Association challenges are consistent with the directives that this Board has issued in [*Washington County Police Officers Association v. Washington County*, 12 PECBR 693, *on reconsideration*, 12 PECBR 727 (1991)]. Because nothing in the County's manual contravenes our prior Orders, the complaint fails to raise a question of law.
>
> "* * * * *
>
> "* * * When revising the manual, the County did nothing more than comply with the minimum legal requirements regarding employee rights to union representation in investigatory interviews, as set forth in [*Washington County Police Officers Association v. Washington County*, 12 PECBR 693, *on reconsideration*, 12 PECBR 727 (1991)]. In that case, we held that a prior edition of the manual infringed on employee rights and violated subsection (1)(a) and ordered the County to modify its manual."

*WCPOA III*, 13 PECBR at 633.

We hold that ERB's order in *WCPOA I* directed the County to provide immediate affirmative relief of a specific nature. To require bargaining before implementation of that order would have been inconsistent with that order and, as such, error. The Court of Appeals erred in reaching a contrary result.

## CONCLUSION

For the forgoing reasons, we hold that the Association's first theory in its unfair labor practice complaint was barred by the common law doctrine of issue preclusion. The second theory, seeking mandatory bargaining over the content of the County's Complaint Investigations Procedures Manual in advance of making any changes in it, was precluded by ERB's order.

The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the Employment Relations Board is affirmed.

**UNIS, J.,** dissenting.

ORS 243.676(1)(b) and (c) obligate the Employment Relations Board (ERB) to conduct a hearing on an unfair labor practice complaint if its investigation reveals that an "issue of fact or law exists." ERB declined to hold a hearing in this case. The sole issue presented here is whether the complaint describes an issue of fact or law. If it does, ERB's action was erroneous.

In *Washington County Police Officers Association v. Washington County*, 12 PECBR 693 (1991) (*WCPOA I*), ERB held that Washington County's (the County) conduct during an investigatory meeting for a union member violated ORS 243.672(1)(a), which forbids a public employer to "[i]nterfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662." I refer to ORS 243.672(1)(a) as the "coercion" statute. To remedy the County's violation of the coercion statute, ERB entered the following remedial order, the text of which is critical to the outcome in this case:

"1. The County shall cease and desist from instructing [Washington County Police Officers Association (Association)] representatives to be silent during investigatory interviews of Association members and [from] limiting the role of the Association representative to that of an observer during such interviews.

"2. · The County shall cease and desist from interfering with employees' representational rights in the Manual by relegating the employee representative to the role of an observer during any interview or meeting to which an employee's right to representation attaches. The County shall modify its Manual within 14 days of this Order consistent with this Order." 12 PECBR at 706-07.

ERB ordered the County to take *two specific actions*: (1) stop telling Association representatives to be silent during investigatory interviews and stop limiting their role to that of an observer, and (2) stop interfering with employee rights under the County's manual by relegating the Association's representatives to the role of observer during interviews and "modify [the County's] Manual within 14 days of the order *consistent with this Order." Id.* at 707 (emphasis added). Only the latter remedial order is relevant to the discussion here.

The Association petitioned for, and ERB granted, reconsideration. *Washington County Police Officers Association v. Washington County*, 12 PECBR 693, *on reconsideration*, 12 PECBR 727 (1991) (*WCPOA II*). In *WCPOA II*, 12 PECBR at 731, ERB said that the PECBA did not grant union representatives the right to counsel employees during investigatory interviews and that, "[a]t this time, we believe issues of a greater or lesser role for union representatives in investigatory interviews are better left to the collective bargaining process."

On February 1, 1992, the County promulgated a revised manual. In the revised manual, the County did satisfy the second remedial measure ordered by ERB in *WCPOA I* by deleting the language from its manual that, in ERB's words, "relegat[ed] the employee representative to the role of an observer during any interview or meeting to which an employee's right to representation attaches." *WCPOA I*, 12

PECBR at 707 (text of remedial order No. 2).[1] *However, in revising its manual, the County went beyond the terms of ERB's remedial order.* In addition to deleting the language that required the Association representative to "only be an observer," the County also struck language that *expressly permitted* the Association to engage in "the counseling of the employee." The County also promulgated four procedural rules that purported to control the employee representative's right of participation in an investigatory interview:

"A) During the investigatory interview, the Association representative may:

"1. Inquire, at the outset of the interview, regarding its purpose, including inquiring about the general subject matter of the questioning to follow.

"2. During the questioning of the employee by the employer, participate only to the extent of seeking clarification of questions, but may not counsel the employee during questioning.

"3. After the employer has completed the questioning of the employee, ask the employee questions designed to clarify previous answers or to elicit further relevant information.

"4. Before the end of the meeting, suggest to the employer other witnesses to interview and may describe relevant practices, prior situations, or mitigating factors that could have some bearing on the employer's deliberations concerning discipline." *Washington County Police Officers' Association v. Washington County*, 13 PECBR 627, 629 (1992) (*WCPOA III*).

The County promulgated those changes unilaterally, without good faith bargaining.

---

[1] The original version of the manual, which was in effect when *Washington County Police Officers Association v. Washington County*, 12 PECBR 693 (1991) (*WCPOA I*), was decided, said, as material:

"The Union representative *shall only attend any employee interviews as an observer* and shall not participate in the interview unless expressly allowed to by the supervisor.

"* * * * *

"The selected representative *is restricted to the counseling of the employee* and shall not actively participate in the interview of the employee." *Id.* at 699-700 (emphasis added).

The Association filed an unfair labor practice complaint that alleged that, by promulgating those changes, the County violated the coercion statute, ORS 243.672(1)(a), and *also the statute, ORS 243.672(1)(e), that requires good faith bargaining over an employer's changes in matters of employment relations.* The latter statute was not construed or applied in ERB's *WCPOA I* or *WCPOA II* decisions. The Association argued that the County's action violated the bargaining statute by deleting unilaterally the Association's right under the manual to "counsel[] * * * the employee" and by imposing procedural limitations on Association representatives in interviews. The Association points out, correctly, that those changes were not ordered by ERB in its remedial order in *WCPOA I.* Moreover, the Association argues that *WCPOA I* and *WCPOA II* addressed the question of an appropriate remedy for a violation of the *coercion* statute, not whether changes to the manual that ERB ordered or that the County might unilaterally implement would violate the *good faith bargaining duty* or what the remedy for such a violation might be. ERB never decided in those cases whether the subject of representation rights in investigatory interviews is a mandatory subject of bargaining. ERB's only reference to bargaining rights occurred in *WCPOA II*, in which ERB said:

> "At this time, we believe issues of a greater or lesser role for union representatives in investigatory interviews are *better left to the collective bargaining process." WCPOA II*, 12 PECBR at 731 (emphasis added).

ERB dismissed both charges without a hearing. The principal dispute here concerns ERB's dismissal without a hearing of the alleged bargaining violation.[2] ERB expressed its reason for that dismissal in the following passage, which I quote in full:

> "To the extent that the Association contends that the County violated ORS 243.672(1)(e) by unilaterally changing conditions of employment when revising the manual, we reject that contention. When revising the manual, the County did nothing more than comply with the minimum. legal requirements regarding employee rights to union representation in investigatory interviews, as set forth in

[2] I express no view regarding the correctness of the majority's analysis concerning the dismissal of the charge under the coercion statute.

[*Washington County Police Officers Association v. Washington County*, 12 PECBR 693, *on reconsideration*, 12 PECBR 727 (1991)]. In that case, we held that a prior edition of the manual infringed on employee rights and violated subsection (1)(a) and ordered the County to modify its manual.

"*An employer has no obligation to bargain over changes made to meet minimum legal requirements.* If we were to adopt the Association's argument, we would have to hold that an employer's modification of an unlawful practice would not be permitted, unless agreement were reached or the PECBA dispute resolution process was completed. Such a holding would require an employer to continue its unlawful conduct while bargaining was completed. We will not require employers to engage in unlawful conduct. *If an employer were notified, or itself determined that it had violated minimum wage requirements, an employer would have to raise wages to the minimum wage and would not be obligated to bargain.*" *WCPOA III*, 13 PECBR at 633-34 (emphasis added; footnote omitted).

The majority's analysis of those eight quoted sentences is, in a word, strange. First, the majority, quoting the emphasized fourth and eighth sentences, 321 Or at 438, suggests that that language states *one* basis for ERB's dismissal, *i.e.*, that an "employer has no obligation to bargain over changes made to meet minimum legal requirements." The majority rejects, as did the Court of Appeals, that reason as a basis for ERB's dismissal. In rejecting that asserted rationale, the majority is correct.

The majority, however, says that ERB relied on a second reason for its dismissal, *i.e.*, "its authority to order affirmative relief necessary to effectuate the purposes of the public employees' collective bargaining law (PECBA)." 321 Or at 439. Those words do not appear in ERB's order. To prove the existence of that alleged second reason, the majority quotes the other six sentences (the first through the third, and the fifth through the seventh) in ERB's statement of its reason for dismissal. 321 Or at 439-40.

The majority's attempt to discover a second reason for ERB's decision fails. ERB's purported explanation for dismissing the bargaining charge conveys only one reason: ERB believed that the County was entitled to unilaterally implement changes to meet what ERB labeled as "minimum

legal requirements," citing *WCPOA II*, and that requiring bargaining over such changes would compel an employer to continue unlawful conduct. ERB would have no basis to rely on the purported "second" reason stated by the majority, because ERB was concerned, mistakenly, with the County's predicament that resulted from the County's own unilateral conduct, not with ERB's authority to order effective relief. That is the reason that ERB's statement of its rationale does not cite the statute that authorizes ERB to order remedies, ORS 243.676(2), and makes no reference, in words, to any concern about ERB's remedial power.

The majority jumps to the conclusion that ERB ruled as it did to protect "ERB's authority — indeed duty — to order immediate affirmative relief." 321 Or at 440. I have demonstrated already that ERB never reached any such conclusion. The majority simply refuses to recognize that it already has rejected, correctly, ERB's only reason for dismissing the complaint.

The right to bargain, which ERB and the majority effectively evade, is of critical importance to the Association. In *WCPOA I* and *WCPOA II*, ERB did not decide whether the Association's participation in investigatory interviews affected matters of employment relations and, thus, was subject to a mandatory bargaining duty. The Association asserts in this proceeding that that topic is mandatorily bargainable. It did not litigate that issue in the earlier contested cases.

If the Association is correct, it has a strong interest in bargaining for inclusion of agreements about that topic in its contract. ERB's view that the County merely changed its manual to conform to minimum legal requirements is unresponsive to the Association's point. If the changes to the manual concern a mandatorily bargainable subject, the Association has a right under ORS 243.672 (1)(e) to bargain about those minimum legal requirements *and to require inclusion of any agreements about those matters in a contract*. The County cannot evade its duty to bargain for a contract clause on a mandatory subject by unilaterally inserting wording on that subject in a County manual.

The majority suggests that this court's task is to interpret ERB's remedial order in *WCPOA I* to determine whether it left to the County the discretion how or when it would comply with ERB's order or, instead, ordered the County to perform specific acts without granting discretion regarding compliance to the County. To no one's surprise, the majority concludes that ERB's order is of the latter kind. That is a foregone conclusion, because ERB *never* has issued a remedial order of the former kind.

In reaching its decision in this case, the majority's reasoning is erroneous for several reasons. The remedial order in *WCPOA I* is unambiguous. Thus, neither ERB nor the majority, by "interpretation," can read into that order a broader remedy than its clear terms describe. The dispute there concerned a phrase in the County's manual that made the employee representative a mere "observer" during interviews. ERB found that that phrase constituted illegal coercion and ordered the County not to treat a representative as a mere observer and to modify the manual "consistent with this Order." ERB's remedial order in *WCPOA I* required deletion of the "observer" requirement, not the wholesale modification of investigatory interview procedures that the County unilaterally implemented.

However, the majority's attempt to broaden ERB's remedial order by a process of construction is not the main problem with its logic. The majority says that it is compelled to interpret ERB's order to discern whether it required a specific remedial act because, if it does, it "cannot, if it is to be effective, be subjected to an indeterminate delay by a party's insistence that it be bargained over *before implementation*." 321 Or at 440 (emphasis in original).

Several problems undermine that reasoning. First, it resurrects ERB's notion that the County's duty to comply with ERB's order excuses it from fulfilling other statutory obligations, such as bargaining in good faith, that arise upon issuance of a demand to bargain. The majority opinion rejects that view, as did the Court of Appeals, and I agree, because the County's difficulty is traceable to its own wrongdoing. If the County's argument about inconsistent legal obligations is insufficient to justify nullifying compliance with the statutory bargaining obligation, so is the majority's theory that

postpones compliance with the bargaining obligation. The majority fails to explain its irreconcilable answers on those issues.

Second, the majority simply is wrong in assuming that the Association's post-order demand for bargaining somehow will disrupt the effectiveness of ERB's order and cause indeterminate delay. The timing of bargaining can be critical to the effective functioning of the bargaining process. The question before ERB was whether the County had a bargaining obligation *when the Association demanded bargaining* and violated it by unilaterally implementing numerous changes in the manual. The bargaining demand has no legal effect on ERB's order or the County's obligation to comply with it. Certainly, the ERB order does not insulate the County from a bargaining obligation that arises before it complies with the order.

Third, even if ERB had expressly ordered the County to make the modifications that it unilaterally implemented, the Association is entitled to demand bargaining over those changes if they relate to a mandatory bargaining subject. ERB has yet to rule on the bargainability of those subjects. If the changes relate to a mandatory subject, the question whether the ERB order is a complete defense to the bargaining charge or merely affects the potential remedy is itself an issue that ERB must decide in a hearing and not reject summarily.

Instead of speculating that bargaining would lead to "an indeterminate delay" in implementation of ERB's order, which is a prejudgment that is unfounded on this record, the majority and ERB should allow the parties to participate in the bargaining process in the way that they deem appropriate. That process could result in an agreement, perhaps before the compliance date set by ERB's order, and there is no justification for the majority's assumption to the contrary. Properly viewed, the coexistence of the ERB remedial order and the demand to bargain merely is a source of pressure on both labor and management that either side may exploit lawfully in order to achieve their objectives in the bargaining arena. The majority upsets the equilibrium of the bargaining process by canceling the County's bargaining obligation and permitting the County to implement unilaterally the changes

in its manual that it prefers as the new status quo. That result necessarily places a greater burden on the Association in its attempt to bargain for a different set of interview procedures in a contract.

The majority purports to mitigate the effect of affirming ERB's order by stating in a footnote that either side can "bargain over any appropriate subject of bargaining at any time. We hold only that bargaining may not delay implementation of certain specific orders of ERB, such as the one at issue here." 321 Or at 440 n 7. That statement cannot hide the fact that the ERB order here is typical of many ERB remedial orders and that the result adopted by the majority will prejudice the position of the party demanding bargaining, which is, typically, labor in virtually every similar case. The majority's statement offers no solace to those employee organizations that must bargain for changes in management's unilaterally implemented status quo.

Finally, the majority fails to justify ERB's action in dismissing the complaint *without a hearing*. As discussed above, ERB never decided in *WCPOA I* whether the procedures applicable to investigatory interviews concern a mandatory bargaining subject. In *WCPOA II*, 12 PECBR at 731, ERB said that the role of the union representative in investigatory interviews is "better left to the collective bargaining process." The Association's complaint here raised that viable legal issue, as well as the question of what remedy ERB should order, if any, for the County's refusal to bargain over its procedural changes. ERB was obligated to address those issues in a hearing.

If *any* portion of the change implemented by the County was not compelled by ERB's remedial order in *WCPOA I*, ERB erred in dismissing the Association's charge without a hearing. Neither ERB nor the majority explain how that order can be construed to require the County to delete unilaterally the Association's affirmative right under the former manual to engage in "the counselling of the employee." That error alone requires reversal of ERB's dismissal order.

As the majority correctly observes, the County's reliance on "minimum legal requirements" does not excuse

the County from its bargaining obligations or "excuse ERB from enforcing them." 321 Or at 439. As a result, the Association's complaint raised an "issue of fact or law" within the meaning of ORS 243.676(1) that required ERB to hold a hearing. ERB's dismissal of the complaint without a hearing was error.

I respectfully dissent.