IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ADAM GOUCHER and KARA GOUCHER,    )
                                  )
              Plaintiffs,         )    TC-MD 111012C
                                  )
       v.                         )
                                  )
MULTNOMAH COUNTY ASSESSOR,        )
                                  )
              Defendant.          )    **DECISION**

This matter is before the court on parties' cross-motions for summary judgment.

Plaintiffs filed their Complaint on September 22, 2011, challenging Defendant's notice of

disqualification of 10.12 acres of property identified as Account R238474 (subject property)

from forestland special assessment for the 2010-11 tax year.[1]  (Ptfs' Compl at 1-2.)

Defendant filed a Motion to Dismiss on November 7, 2011, arguing that the Plaintiffs'

appeal was not filed within the statutory time limit.  A case management conference was held on

December 7, 2011, during which the parties agreed to file cross-motions for summary judgment.

By Order of the court entered December 9, 2011, Defendant's Motion to Dismiss was denied.

That Order is incorporated herein.  Oral argument was held by telephone on March 6, 2012.

Plaintiffs were represented by Dean Alterman, Attorney at Law.  Defendant was represented by

Lindsay Kandra, Assistant County Counsel.

---

[1] Although Plaintiffs in their Complaint listed the tax year as 2010-11, the correct tax year is 2011-12.  The reason for the court's conclusion is found in ORS 321.366(1) (2009), which requires "notice of removal [i.e. disqualification] [to be] mailed * * * prior to August 15 of the tax year for which the removal of land is asserted" in order for the general provisions found in subsection (1) to apply.  Under subsection (1) of ORS 321.366, the removal of the forestland designation "occur[s] as of the January 1 assessment date for the tax year in which the county assessor discovers that the land is no longer forestland."  In this case, Defendant's notice of disqualification was issued on or about June 22, 2011, which was during the 2010-11 tax year (a fiscal year beginning July 1, 2010, and ending June 30, 2011), but after August 15 of the 2010-11 tax year and, under ORS 321.366(2), because notice of the removal was mailed after the August 15, 2010, deadline effectively provided in subsection (1) of ORS 321.366, subsection (1) does not apply and the disqualification therefore does not take effect until the 2011-12 tax year.

## I. STATEMENT OF FACTS

The parties did not file stipulated facts, but the uncontested facts are as follows. Plaintiffs' property is zoned Residential Farming/Forest (RF) by the Code of the City of Portland and subject to both conservation (c) and protection (p) overlays. (Ptfs' Ex 2 at 1, Def's Ex B.) The subject property is also within the City of Portland's Northwest Hills Plan District, Balch Creek Watershed Subdistrict. (Def's Mot for Summ J at 4.) The subject property was first granted special assessment as designated forestland as defined ORS 321.257(2) for the 2005-06 tax year. (Ptfs' Mem in Support of Ptfs' Mot for Summ J at 2; Def's Ex D at 2-3.) Plaintiffs' acquired the property in 2009. (Ptf's Ex 3 at 1, Def's Ex D at 1.) In 2009 Plaintiffs applied to the City of Portland for a Type II land use decision allowing them to build a house on the subject property. (*See* Def's Ex F at 2.) The city approved Plaintiffs' proposal in August 2009. (*Id*. at 1) The undeveloped portion of the subject property maintained its status as designated forestland through the 2010-11 tax year. Defendant mailed Plaintiffs a notice that the subject property no longer qualified as designated forestland on June 22, 2011. (Def's Ex A.) Plaintiffs' timely appealed the disqualification.

## II. ANALYSIS

A.    *Summary judgment*

The parties have filed cross-motions for summary judgment. The standard for summary judgment is provided in Tax Court Rule (TCR) 47 C,[2] which states in pertinent part:

> "The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the

---

[2] TCR 47 is made applicable through the Preface to the Magistrate Division Rules, which state in pertinent part that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

The parties' cross motions for summary judgment focus on two issues: First, whether Defendant is collaterally estopped from disqualifying the subject property from forestland special assessment in 2011 after approving an application for special assessment in 2005. Second, that the c and p overlays restriction the subject property such that it no longer meets the definition of forestland.

B.    *Issue preclusion*

"Issue preclusion occurs when a court has decided an issue that a party is trying to relitigate, so long as that issue was identical, actually litigated and decided on the merits, and final. Additionally, the precluded party must have had an opportunity to be heard and must have been a party or in privity with a party to the prior litigation. The prior litigation must also have been of a type to which the court will give preclusive effect.*" Safley v. Jackson County Assessor* TC-MD No 091206C (December 2, 2010) citing *Washington County Police Officers v. Washington County*, 321 Or 430, 435, 900 P2d 483 (1995) (citations omitted).

A determination of designated forestland is not litigation. There is no hearing on the merits; an application is submitted and a determination is made. If property is granted forestland designation, that determination is not final; the determination lasts until the assessor removes the designation. "When land has once been designated as forestland * * * it shall be valued as such until the assessor removes the forestland designation under paragraph (b) of this subsection." ORS 321.359(1)(a).[3]  Oregon Law specifically provides appeal rights for property owners who have been denied designated forestland status or have had the designation removed.

[3] All references to the Oregon Revised Statutes (ORS) are to 2009.

ORS 321.359(2) states that "a taxpayer whose forestland has had the designation thereof removed in whole or in part, may appeal to the tax court within the time and in the manner provided in ORS 305.404 to 305.560." Because the previous determination was not litigated and was not final, the Defendant is not collaterally estopped by its 2005 determination.

C.      *Notice*

For a notice of disqualification to be valid, the notice must conform with ORS 308A.718, including ORS 308A.718(3), which states in pertinent part that "the assessor shall notify the taxpayer in writing of the disqualification and shall state the reason for the disqualification." Defendant's notice of disqualification stated the reason was that "[i]t has come to our attention that either The City or County Planning Department has applied one of the following Environmental Overlays to your property: (c), (p). These overlays have restrictions such that the property no longer meets the definition of forestland." (Ptfs' Compl at 2.) Plaintiffs' motion asserts that the issue is limited to the reason given in the disqualification and that "the only issue before the court is whether defendant's one reason for disqualifying plaintiffs' property – the effect of the city zoning – is correct." (Ptfs' Resp. to Def's Mot. for Summ. J. at 2.) Plaintiffs are correct that the issue is limited by the notice given to Plaintiffs by Defendant, whether or not the zoning scheme prevents the subject property from meeting the definition of forestland.

D.      *Whether the c and p overlays prevent the land from being found to be designated forestland*

Defendant's sole reason for disqualifying the subject property was that there were environmental overlays on the subject property and that "[t]hese overlays have restrictions such that the property no longer meets the definition of forestland." (Ptfs' Compl. at 2, Def's Ex A at 1.) ORS 321.257(2) defines forestland as:

" 'Forestland' means land in western Oregon that is being held or used for the *predominant purpose* of growing and *harvesting* trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees. * * *."

(Emphasis added.)

The issue is not whether trees *can* be harvested from the subject property. The parties are in agreement that the c and p overlays are "not an automatic and absolute bar to foresting within the overlay zones." (Def's Mot for Summ J at 7.) The issue is whether the c and p overlays prevent the subject property from meeting the definition of forestland as provided in ORS 321.257(2).

Plaintiffs' property was designated forestland in 2005. If the property's highest and best use was growing and harvesting trees of a marketable species, then such designation would not have been necessary. "If the highest and best of the [subject] property was forestland, it never should have been designated forestland in the first place." *Kliewer v. Dept. of Rev.* 15 OTR 139, 146 (2000). Highest and best use forestland does not require a special designation to be specially assessed as forestland. Plaintiffs have also built a house on part of the subject property indicating that the highest and best use of the subject property is not forestland but is some mixed use of residential and forestland. As in *Kliewer*, the "[subject property] is zoned for a residential site as well. As a rural residential site with forestland use, the total parcel would have a higher economic value than just for forestland use alone." *Id.* Given that before the application for special designation, the subject property had the presence of the house, and therefore, the highest and best use was not forestland, the subject property's highest and best use is not forestland now.

In order to qualify as designated forestland, the land must be "being held or used for the predominant purpose of growing and harvesting trees of a marketable species."

ORS 321.257(2). In determining whether property is "forestland" within the meaning of ORS 321.257(2), this court has considered numerous factors, including the existence of a forest management plan, zoning, the purchase price of the property, the character of neighboring properties, restrictive covenants, and the taxpayer's stated purpose.

Plaintiffs are not required by statute or by the zoning overlays to have a forest management plan, nor did they create one on their own.

The subject property's base zone is Residential Farm/Forest with c and p overlays, located in the Balch Creek Watershed Subdistrict, with a single family home located on the subject property. The city of Portland zoning code states in part that "[t]he Residential Farm/Forest zone is intended to generally be an agricultural zone[.]" The Code of the City of Portland, Oregon (PCC) 33.110.020.[4] The PCC lists forestry as an example of the uses for an agricultural zone. (PCC 33.920.500(C)). However, parts of the subject property are subject to either the c or p overlays, and the entirety of the subject property is within the Balch Creek Watershed Subdistrict of the Northwest Hills Plan. The purpose of the c overlay as stated in the PCC is to "conserve[] important resources and functional values in areas where the resources and functional values can be protected while allowing environmentally sensitive urban development." PCC 33.430.017. The purpose of the p overlay is to "provide[] the *highest level of protection to* the most important *resources* and functional values. * * * Development will be approved in the environmental protection zone *only in rare and unusual circumstances*." PCC 33.430.015. (Emphasis added.) While the PCC's purpose is written with a concern for development, the overall purpose is clear; that purpose is the preservation and conservation of existing resources.

---

[4] All references to the Code of the City of Portland are to the 2012 version, as there is no material difference between it and the 2011 version.

The Balch Creek Watershed Subdistrict imposes even more restrictions on the types of activities permitted on the land. PCC 33.563.100 lists the prohibitions on the land, including "[a]ctivities which expose soil to direct contact with stormwater between October 1 and April 30 * * *." PCC 33.563.100(A). The PCC goes on to impose additional restrictions including restrictions on "Stormwater runoff," "Soil erosion" and "Forest cover," although notably there is an exception for the forest cover rules for "Agriculture" uses. PCC 33.563.110. None of the additional restrictions outright ban forestry as a use on the land; however, the additional restrictions make it much more difficult, if not impossible to conduct forestry operations on the land within the subdistrict. The c and p overlays are intended to control urban development while preserving environmental resources; forestry would seem to be the antithesis of this purpose, and at odds with an intent to hold or use land for the predominant purpose of growing and *harvesting* trees. If an individual were looking for property where they could grow and cut trees, they would not purchase Plaintiffs' property because the various protective environmental overlays created unknown element of risk to the hypothetical would-be forrester.

Plaintiffs purchased the subject property for 46 percent more than the seller had bought the property for 2 years earlier. (*See* Ptfs' Ex 3 at 1.) The property was subject to the same zoning when it was bought as it is now. Shortly after Plaintiffs purchased the property, they filed an application for a permit to build a house on the property. The property is located on the City of Portland boundary line in close proximity to the state's largest city (Portland), with a developed subdivision nearby. (Def's Ex F at 3.) The subject property is bordered by lots zoned R10, RF, and the city boundary. (*Id*. at 21.) The R10 zone allows for development of residential housing with the maximum of 1 dwelling unit per 10,000 square feet, while the RF zone allows

for a maximum density of 1 dwelling unit per 87,120 square feet. PCC 33.610.100(E), Table 610-1. There are not any additional restrictive covenants that apply to the subject property.

No single one of these elements is dispositive, but they can be used in total to determine whether the subject property is "being held or used for the predominant purpose of growing and harvesting trees of a marketable species." ORS 321.257(2). When these facts are considered in a light most favorable to the Plaintiffs, there is no evidence that the land is being held or used for the predominant purpose of growing and harvesting trees, and Plaintiffs' actions, coupled with the various environmental detective overlays, belie any claim of the predominant purpose of harvesting trees.

The history of the subject property is that of either investment or development purposes. The subject property is located within the city limits of Portland, albeit in a mostly rural, but predominantly residential area. The zoning overlays make it clear that the city intends to protect environmental resources from overdevelopment while providing for responsible urban growth. The names of the overlay zones, Protection and Conservation, also imply this purpose.

Overall, Plaintiffs have not taken any active steps to show that their predominant purpose is to grow and harvest trees of a marketable species. Plaintiffs have made no attempts to work with the City of Portland to establish how and when the harvesting of trees on the subject property could take place without being in violation of the restrictions placed on the subject property through the c and p zoning overlays.

The presence of the c and p overlays restricts the possible use of the subject property for forestry related purposes to such an extent that the subject property is no longer being held or used for the predominant purpose of growing and harvesting timber.

/ / /

### III. CONCLUSION

The court finds that there is no legal basis to collaterally estop Defendant from changing the previous determination and finding that the subject property is not designated forestland. Summary judgment is granted to Defendant on that issue. Additionally, the court finds that even when the evidence is viewed in a manner most favorable to the Plaintiffs, there is no genuine issue of material fact that would show that the subject property would meet the definition of forestland as required by ORS 321.257(2). Defendant, therefore, did not err in removing the land from designated forestland special assessment and summary judgment for Defendant is appropriate on that issue. Now, therefore,

IT IS DECIDED that Defendant's Motion for Summary Judgment is granted and Plaintiffs' Motion for Summary Judgment is denied. The subject property, identified as Account R238474, did not qualify as designated forestland for tax year 2011-12, and Defendant's disqualification is sustained.

Dated this ___ day of June 2012.

 

 

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on June 15, 2012. The Court filed and entered this document on June 15, 2012.*